77 P.3d 956

STATE of Idaho, Plaintiff–Respondent,

v.

Billy G. SHEAHAN, Defendant–Appellant.

No. 29121.

Supreme Court of Idaho,
Boise, April 2003 Term.

Aug. 4, 2003.

Molly J. Huskey, State Appellate Public Defender, Boise, for appellant. Mark James Ackley argued.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

SCHROEDER, Justice.

This case is before the Court on a petition to review the Court of Appeals decision vacating the conviction of Billy Sheahan for first degree murder for the shooting death of Darrell Fernquist, a bail bondsman. The State requests that this Court affirm the original conviction.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Court of Appeals accurately set forth the background of the case:

Sheahan was arrested for misdemeanor offenses in Shoshone and Kootenai Counties. Fernquist, as co-owner of Access Bail Bonds, posted bail for Sheahan in the aggregate amount of $2800 for Sheahan's release. Sheahan thereafter failed to appear at a pretrial conference for the offenses. The district court issued two bench warrants for Sheahan's apprehension. Under the terms of Idaho's bail statutes, Fernquist was required to have Sheahan appear before the district court within ninety days after Sheahan's missed appearance or risk permanent forfeiture of the posted bail amount.

Fernquist contacted a recovery agent to try to apprehend Sheahan. Fernquist also stopped at Sheahan's residence in Pinehurst, Idaho several times searching for Sheahan and left business cards with Sheahan's neighbor. Prior to his attempts to apprehend Sheahan, Fernquist had never attempted to apprehend a bail jumper.

Approximately ten days before the bond's permanent forfeiture, Fernquist made an early morning trip to Sheahan's residence. On this visit, Sheahan shot and killed Fernquist inside the residence. After the shooting, Sheahan eventually went to a friend's house, called 911 and told the dispatcher that he had shot someone who was breaking into his house.

The details of Fernquist's death were disputed at trial. The state's theory of the case was that Sheahan knew that someone would be looking for him because he had failed to appear in court. As Sheahan saw Fernquist coming to apprehend him, Sheahan decided to kill Fernquist. A piece of pipe which was broken off from other pipe located in Sheahan's garage was found near Fernquist's body. However, it had no fingerprints. Thus, the state suggested that Sheahan placed the pipe near Fernquist to bolster his justifiable homicide claim. Additionally, the state presented evidence that in an incident about five weeks before the shooting, Sheahan had pointed a gun where an officer stood at the threshold of his residence.

Sheahan's theory of the case was that the shooting was justifiable. He stressed that Fernquist was not wearing official clothing that would identify him as an authority figure coming to apprehend Sheahan. Nor did neighbors hear Fernquist announce his presence at the residence. Also, the window in the front door had been broken from the outside. Fernquist had small slivers of glass on his body while Sheahan had none. Thus, Sheahan argued that Fernquist broke into his residence with a weapon, startled him and that he shot a single gunshot to stop what he believed to be an intruder.

A jury found Sheahan guilty of first degree murder. Sheahan appealed and the case was assigned to the Court of Appeals. The Court of Appeals vacated the conviction, finding that the jury instruction for "proof beyond a reasonable doubt" misstated the law and that the district court erroneously admitted irrelevant evidence of a prior incident where Sheahan pointed a gun toward a door where a police officer stood. The Court of Appeals also affirmed the district court's denial of Sheahan's motion for change of venue and provided as guidance that evidence of Sheahan's non-use of weapons when taking persons into custody was improperly admitted. The State now appeals, requesting this Court to affirm the original conviction. Sheahan appeals the district court's denial of his motion for a change of venue and also argues ten other issues, which were raised but not addressed by the Court of Appeals.

# II.

## STANDARD OF REVIEW

 When considering a case on review from the Court of Appeals, this Court does not merely review the correctness of the decision of the Court of Appeals. *Leavitt v. Swain*, 133 Idaho 624, 627, 991 P.2d 349, 352 (1999). This Court acts as though it is hearing the matter on direct appeal from the decision of the trial court. However, this

Court does give serious consideration to the decision of the Court of Appeals. *Id.; Sato v. Schossberger,* 117 Idaho 771, 774–75, 792 P.2d 336, 339–40 (1990). When this Court grants a petition to review a Court of Appeals decision, it will ordinarily hear all the issues presented to the Court of Appeals. *Sato,* 117 Idaho at 774, 792 P.2d at 339.

 Constitutional issues and the propriety of jury instructions are questions of law over which this Court exercises free review. *State v. Statton,* 136 Idaho 135, 136, 30 P.3d 290, 291 (2001); *Clark v. Klein,* 137 Idaho 154, 156, 45 P.3d 810, 812 (2002). If a reasonable doubt instruction is found to have lessened the state's burden of proof, the error is never harmless error. *Sullivan v. Louisiana,* 508 U.S. 275, 281, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182, 190 (1993) ("[T]he essential connection to a 'beyond a reasonable doubt' factual finding cannot be made where the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings").

## III.

## THE JURY INSTRUCTION DEFINING "PROOF BEYOND A REASONABLE DOUBT" ADEQUATELY STATES THE LAW

The jury instruction used by the district court to define "proof beyond a reasonable doubt" states:

"Proof beyond a reasonable doubt" is proof that leaves you with an abiding conviction of the truth of the charge against the defendant. An abiding conviction is one that would make an ordinary person willing to act in the most important affairs of his or her own life. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof which overcomes every possible doubt. If, based upon your consideration of the evidence, you have an abiding conviction that the defendant is guilty of the crime charged, you must find the defendant guilty. If on the other hand, you think there is a reasonable doubt as to the defendant's guilt,

you must give the defendant the benefit of the doubt and find the defendant not guilty.

 When reviewing jury instructions, this Court must determine whether "the instructions, as a whole, fairly and adequately present the issues and state the law." *Silver Creek Computers, Inc. v. Petra, Inc.,* 136 Idaho 879, 882, 42 P.3d 672, 675 (2002). When reviewing a "reasonable doubt" instruction, "[t]he Constitution does not dictate that any particular form of words be used in advising the jury of the State's burden of proof, so long as 'taken as a whole, the instructions correctly conve[y] the concept of reasonable doubt.'" *State v. Gleason,* 130 Idaho 586, 589, 944 P.2d 721, 724 (Ct.App. 1997) (quoting *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150, 166 (1954)). An erroneous instruction does not constitute reversible error unless the instructions, when taken as a whole, misled the jury or prejudiced a party. *Silver Creek Computers,* 136 Idaho at 882, 42 P.3d at 675; *State v. Nath,* 137 Idaho 712, 716, 52 P.3d 857, 861 (2002). If a reasonable doubt instruction is found to have lessened the state's burden of proof, the error is never harmless error. *Sullivan,* 508 U.S. at 281, 113 S.Ct. at 2082–83, 124 L.Ed.2d at 190.

 Idaho cases have described "reasonable doubt" as not being a fanciful or imaginary doubt. *See State v. Taylor,* 76 Idaho 358, 361–62, 283 P.2d 582, 584–85 (1955) (approving an instruction stating that a reasonable doubt is not "a flimsy, fanciful, fictitious doubt which you could raise about anything and everything"); *State v. Levy,* 9 Idaho 483, 496, 75 P. 227, 231 (1904) (a reasonable doubt is not "a mere imaginary, captious or possible doubt"); *People v. Dewey,* 2 Idaho 79, 82, 6 P. 103, 106 (1885) (approving an instruction stating that a reasonable doubt is not "a mere possible doubt, nor is it a captious or imaginary doubt"). Also, the Idaho Criminal Jury Instructions define "reasonable doubt" as not "mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possi-

ble or imaginary doubt." I.C.J.I. 103.[1] However, reasonable doubt instructions need not exactly quote Instruction 103 to survive a challenge on appeal. *State v. Harris*, 136 Idaho 484, 485, 36 P.3d 836, 837 (Ct.App. 2001). Idaho cases have also permitted jury instructions that provide the State need not overcome every "possible doubt," with no reference to terms such as imaginary or fanciful. *See State v. Merwin*, 131 Idaho 642, 962 P.2d 1026 (1998); *State v. Hoffman*, 123 Idaho 638, 643, 851 P.2d 934, 939 (1993).[2]

In *Merwin* the Court addressed the issue of whether a "proof beyond a reasonable doubt" jury instruction that said the prosecution is not required to overcome "every possible doubt" misstated the law. The Court stated:

We first address Merwin's contention that the district court misstated the law when it instructed the jury that the prosecution was not required to overcome every possible doubt. We find Merwin's arguments to be unpersuasive. Idaho Criminal Jury Instruction 103, itself, states that reason-

able doubt "is not mere possible doubt." Although worded differently, the instruction given by the district court stated the same legal proposition. That is, the prosecution need overcome only those doubts that are reasonable, not just possible. We therefore find no error.

131 Idaho at 647, 962 P.2d at 1031. The jury instruction in *Merwin* was taken from the Federal Judicial Center's Pattern Criminal Jury Instructions.[3] Only portions of the instruction in this case are the same as the federal instruction that was allowed by this Court in *Merwin*. However, the instructions are similar in relevant part: neither contains any reference to "fanciful" or "imaginary" doubt. Sheahan points to the federal instruction language of "real possibility," which is not in the instruction of the instant case. The Court in *Merwin*, however, did not rely on that language but relied on the fact that the doubt was still required to be "reasonable," and that the instruction thus properly stated the law. *Id.* at 647, 962 P.2d at 1031. The issue was not significantly different in

---

1. The Idaho Criminal Jury Instruction approved by the Idaho Supreme Court for Reasonable Doubt states in whole:

A defendant in a criminal action is presumed to be innocent. This presumption places upon the state the burden of proving the defendant guilty beyond a reasonable doubt. Thus, a defendant, although accused, begins the trial with a clean slate with no evidence against the defendant. If, after considering all the evidence and my instructions on the law, you have a reasonable doubt as to the defendant's guilt, you must return a verdict of not guilty. Reasonable doubt is defined as follows: It is not mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is the state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.
I.C.J.I. 103.

2. Many other jurisdictions, while not specifically addressing the issue of whether "possible" doubt must be accompanied by the word "imaginary" or the like, have approved of instructions containing the "all possible doubt" language without the word "imaginary," usually approving instructions similar to the Federal Judicial Center's Pattern Criminal Jury Instructions. *See, e.g.*, *Schneider v. Day*, 73 F.3d 610, 611 (5th Cir. 1996); *Harris v. Bowersox*, 184 F.3d 744, 751

(8th Cir.1999); *United States v. Artero*, 121 F.3d 1256, 1258 (9th Cir.1997); *Wilson v. State*, 967 P.2d 98, 101 (Alaska Ct.App.1998). Several courts have specifically approved of the idea that the state is not required to overcome "all possible doubt" or "every possible doubt," suggesting it is a general principle imbedded within the "reasonable doubt" standard. *See United States v. Adkins*, 937 F.2d 947, 950 (4th Cir.1991); *United States v. Stead*, 422 F.2d 183, 185 (8th Cir.1970); *Norwitt v. United States*, 195 F.2d 127, 134 (9th Cir.1952), *cert. denied*, 344 U.S. 817, 73 S.Ct. 11, 97 L.Ed. 635; *Meyer v. Lanham*, 27 F.Supp.2d 616, 620 (D.Md.1998).

3. The federal instruction gives the following definition for reasonable doubt:

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.
Federal Judicial Center, *Pattern Criminal Jury Instructions* 28 (1988).

*Merwin* to warrant a distinction on those grounds.

The instruction given by the district court adequately states the law for reasonable doubt. The sentence in which the possible doubt language is found states, "There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof which overcomes every possible doubt." In context, the phrase "every possible doubt" is clearly linked to the idea of "absolute certainty." The message to the jury is that doubts that are possible, although not at all reasonable, and that prevent a knowledge to an absolute certainty, do not preclude a juror finding a defendant guilty. The first and last sentence of the paragraph also refer to "reasonable" doubts as those doubts that exonerate a defendant, reinforcing the proper interpretation of the word "possible." This instruction, when taken as a whole, does not lessen the State's burden of proof.

Despite the ruling in this case there appears to be no reason to depart from the standard instruction set forth in Idaho Criminal Jury Instructions 103 and approved for use by this Court. Such departures have created unnecessary controversies with nothing added by way of clarity. The instruction in this case is adequate but is, if anything, less clear than the accepted instruction. Trial courts are encouraged to avoid unnecessary appeals and controversy by utilizing the instruction that has an accepted history defining the burden the State bears.

## IV.

### SHEAHAN'S ADDITIONAL ASSIGNMENTS OF ERROR IN THE "REASONABLE DOUBT" JURY INSTRUCTION HAVE BEEN WAIVED

■■■ Sheahan also argues for the first time to this Court that the reasonable doubt instruction lessens the State's burden of proof because of the "willing to act" and "ordinary person" language, as well as the absence of the phrase "moral certainty." However, where a party appeals the decision of an intermediate appellate court, the appellant may not raise issues that are different from those presented to the intermediate court. *State v. Harris,* 132 Idaho 843, 847, 979 P.2d 1201, 1205 (1999). Sheahan did not raise these issues in the Court of Appeals, and the arguments with regard to these alleged errors have been waived.

## V.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN IT ADMITTED EVIDENCE OF AN INCIDENT BETWEEN SHEAHAN AND AN OFFICER

■■■ Sheahan argues that the district court incorrectly admitted evidence of an incident between a police officer and Sheahan that occurred about five weeks before the shooting. For a defendant's other crimes, wrongs, or acts to be admissible under I.R.E. 404(b), a two-tier test must be met. *State v. Law,* 136 Idaho 721, 726, 39 P.3d 661, 666 (Ct.App.2002). First, the evidence must be found relevant to a material and disputed issue in the case. *Id.* at 726, 39 P.3d at 666; *State v. Cannady,* 137 Idaho 67, 72, 44 P.3d 1122, 1127 (2002). Second, the court must find that the probative value of the evidence presented is not substantially outweighed by the danger of unfair prejudice. *Law,* 136 Idaho at 726, 39 P.3d at 666; *Cannady,* 137 Idaho at 72, 44 P.3d at 1127; I.R.E. 403.

To satisfy the relevancy test for the admissibility of prior acts under Rule 404(b), the Court must find that the evidence is admissible for a purpose other than to prove a defendant's character or to show that he or she acted in conformity with that character. *Cannady,* 137 Idaho at 72, 44 P.3d at 1127; I.R.E. 404(b). Rule 404(b) of the Idaho Rules of Evidence provides that evidence of other crimes, wrongs, or acts may be admissible for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. I.R.E. 404(b).

■■■ The details of the incident Sheahan seeks to exclude are as follows: On February 22, 1999, five and one-half weeks before Sheahan shot Fernquist, a police officer named Todd McDevitt was looking for a ju-

venile that had violated curfew. His search led him to Sheahan's residence. Warrants had already issued for Sheahan's arrest in early January of 1999. Officer McDevitt was in uniform and driving a marked patrol car when he drove up to Sheahan's home. He observed that the lights were on in the living room area and in a backroom of the home. As he got out of his vehicle and approached the residence, he noticed that the living room light went out. He knocked on the door and no one answered, but he sensed that someone was there because the curtains over the window on the door kept moving. He knocked again. The doorknob subsequently moved and the door swung open. It was dark inside the room, and Officer McDevitt could see no one inside the residence. He did not enter but said hello and then shined his flashlight into the room. He moved his head inside the room and saw Sheahan pointing a revolver towards the door. Officer McDevitt yelled to drop the gun, and as he retracted his head he saw Sheahan lower the gun so it was pointing in a more downward direction. The door then slammed shut in front of Officer McDevitt, and he left. Officer McDevitt testified that the gun he saw Sheahan holding that night looked like the same type of gun that was used to kill Fernquist.

This incident is relevant to the existence of premeditation or plan. The two events involved similar events and "victims," from Sheahan's perspective. Both incidents involved an authority that could take him into custody who came to his residence after his failure to appear at pretrial conferences and after warrants were issued for his arrest. That Fernquist was not in a police uniform is not an important distinction as Sheahan knew him. Neither is it important that Officer McDevitt was not seeking to take Sheahan into custody because Sheahan would not have known that. Sheahan responded in both instances by pointing a gun in the direction of the authority figure.

■ The second prong is whether the probative value of this evidence would be substantially outweighed by the danger of unfair prejudice. The probative value of this incident is great in that it is strong evidence from which premeditation for the charged crime could be inferred. The prejudicial effect of this evidence is that the jury could improperly consider this evidence as showing conformity with a violent character, despite the limiting instruction given by the district court. The evidence portrays Sheahan as a potentially violent person, willing to resort to deadly force. On balance the district court did not abuse its discretion in determining that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

## VI.

## EVIDENCE THAT FERNQUIST DID NOT USE A WEAPON SHOULD NOT HAVE BEEN ADMITTED BUT WAS HARMLESS

### A. Standard of Review

■ This Court reviews a district court's conclusion that evidence is supported by proper foundation under an abuse of discretion standard. *State v. Groce*, 133 Idaho 144, 146, 983 P.2d 217, 219 (Ct.App.1999).

### B. The objection to testimony regarding Fernquist not using weapons was properly preserved on appeal, and the admission of such evidence was an abuse of discretion but harmless.

Sheahan argues that the testimony from Fernquist's business partner that Fernquist never used a weapon to take anyone into custody was inadmissible habit evidence. At trial he objected on the grounds of lack of foundation.[4] The State argues that objection

4. The following portion of the transcript is relevant to the disputed testimony:

Prosecution: Have you ever gone out unassisted and picked up anybody?
Fernquist's partner: No, no.
Prosecution: To your knowledge has Darrell [Fernquist]?

Fernquist's partner: No.
Prosecution: Have you ever used weapons or guns or anything to take anyone into custody?
Fernquist's partner: No.
Prosecution: Has Darrell [Fernquist]?
Fernquist's partner: No.
Defense counsel: Objection, lack of foundation.

on the grounds of improper habit evidence has not been preserved for appellate review.

■ Generally, this Court will not consider an alleged error on appeal unless a timely objection to the alleged error was made at trial. *State v. Bingham*, 116 Idaho 415, 423, 776 P.2d 424, 432 (1989); I.R.E. 103(a)(1). For an objection to be preserved for appellate review, either the specific ground for the objection must be clearly stated, *State v. Norton*, 134 Idaho 875, 880, 11 P.3d 494, 499 (Ct.App.2000), or the basis of the objection must be apparent from the context. *State v. Cannady*, 137 Idaho at 72, 44 P.3d at 1127. "Objection to the admission of evidence on one basis does not preserve a separate and different basis for exclusion of the evidence." *Norton*, 134 Idaho at 880, 11 P.3d at 499. This Court, however, may consider fundamental error in a criminal case, even where no objection was made at trial. *Bingham*, 116 Idaho at 423, 776 P.2d at 432.

■ Sheahan's counsel objected at trial to the admission of the testimony regarding Fernquist's use of weapons on the grounds of lack of foundation. The response of the district court to the objection shows that it considered the objection as going to personal knowledge under Rule 602 of the Idaho Rules of Evidence. Where an objection has been found not to be preserved, the objection argued on appeal was either distinct from that raised below or the evidence objected to below and on appeal was substantially different. *See, e.g., Cannady*, 137 Idaho at 72, 44 P.3d at 1127 (holding that objection to annotations and references to past crimes of defendant in a book on Rule 404(b) grounds was not preserved where below the book in general was objected to as irrelevant, with no mention of any specific content or annotations); *Norton*, 134 Idaho at 880, 11 P.3d at 499 (holding that lack of foundation objection to an enlarged comparative fingerprint card on appeal was not preserved below where objection on grounds of best evidence was made). The objection at the trial court in this case was not specific but the foundation objection overlaps sufficiently with the habit

The Court: Well, the answer I think presumes it is based only upon his personal knowledge, and on that basis the answer will be admitted.

evidence argument on appeal to preserve the objection.

■ A habit is a person's regular practice of responding to a particular situation with a specific kind of conduct. *State v. Rodriguez*, 118 Idaho 948, 951, 801 P.2d 1299, 1302 (Ct.App.1990). Fernquist's business partner testified that Fernquist had never taken a bail jumper into custody. Consequently, he could not say how Fernquist had acted in a situation similar to the circumstances present in attempting to apprehend Sheahan. There was clearly no foundation for habit evidence. Equally clear, the jury knew that fact.

■ Arguably the objection could have been made on the basis that the evidence was inadmissible character evidence. The introduction of character evidence of a victim is governed by Idaho Rule of Evidence 404(a)(2) which permits "evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor." No objection to the evidence as character evidence was made at trial. The objection to foundation is not broad enough to encompass a 404(a)(2) objection. Therefore, the Court will not consider the issue.

## VII.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION FOR CHANGE IN VENUE

Sheahan argues that he was denied a fair trial and a fair and impartial jury because of (1) prejudicial pretrial publicity, (2) pervasive community prejudice, (3) juror bias and exposure to publicity, (4) the short amount of time between publicity and trial, and (5) the extent of governmental influence on the publicity. As such, he asserts that the district court abused its discretion in denying his motion to change venue.

As agreed, this witness can testify to that, based on personal knowledge.

## A. Standard of Review

 The Court employs an abuse of discretion standard when reviewing a district court's ruling on a motion to change the venue. *State v. Jones*, 125 Idaho 477, 484, 873 P.2d 122, 129 (1994). To determine whether a trial court has abused its discretion, the Court considers whether it correctly perceived the issue as discretionary, whether it acted within the boundaries of its discretion and consistently with applicable legal standards, and whether it reached its decision by an exercise of reason. *Lamar Corp. v. City of Twin Falls*, 133 Idaho 36, 40, 981 P.2d 1146, 1150 (1999).

 It is Sheahan's burden to show that there was a reasonable likelihood that prejudicial news coverage prevented a fair trial in violation of the Sixth Amendment to the United States Constitution. *State v. Hall*, 111 Idaho 827, 829, 727 P.2d 1255, 1257 (Ct.App.1986). To determine whether a change in venue was warranted, the Court determines whether, in the totality of existing circumstances, juror exposure to pretrial publicity resulted in a trial that was not fundamentally fair. *State v. Winn*, 121 Idaho 850, 856, 828 P.2d 879, 885 (1992). The Court considers the following factors when reviewing a district court's exercise of discretion regarding a motion for change of venue: the existence of affidavits indicating prejudice or an absence of prejudice in the community where the trial took place; the testimony of the jurors at jury selection regarding whether they had formed an opinion based upon adverse pretrial publicity; whether the defendant challenged for cause any of the jurors finally selected; the nature and content of the pretrial publicity; and the amount of time elapsed between the pretrial publicity and the trial. *Id.* When reviewing the nature and content of the pretrial publicity, this Court is concerned with the accuracy of the pretrial publicity, the number of articles, and whether the articles will condition the jurors to accept a particular version of the facts at trial. *Hall*, 111 Idaho at 829–30, 727 P.2d at 1257–58. A prospective juror's assurance that he or she is impartial is a consideration in reviewing the record, although such an assurance is not dispositive. *Id.* at 830, 727 P.2d at 1258.

## B. The Decision

The State contends that Sheahan did not preserve for appellate review all of the arguments he now presents as to why he was not given a fair trial, maintaining that the only argument made at trial was that unfair pretrial publicity and community prejudice as evidenced by affidavit would create an unfair trial. However, it is clear that the trial judge considered all of the arguments made by Sheahan on appeal either in the pretrial hearing or in the order denying the motion to change venue. The trial judge recognized and addressed these issues as falling within the factors to be considered. Therefore, the arguments will be considered.

 Sheahan produced several newspaper articles from Pinehurst and neighboring areas that discussed the case prior to trial. Several articles contained some information that may have been incorrect and information which ultimately was excluded at trial, but the district court found the articles to be mostly factual.[5] The district court determined that the five months which had passed since the pretrial publicity weakened the effect of the media coverage. See *State v. Needs*, 99 Idaho 883, 891, 591 P.2d 130, 138 (1979) (five months was sufficient time between pretrial publicity and trial for effect of media coverage to dissipate). The district court determined that any tainting of the jury pool could be addressed and resolved through jury selection. Moreover, the district court also noted that Sheahan could renew his motion for a change of venue if additional articles were published that were potentially prejudicial.

A review of the totality of the circumstances indicates that the district court properly exercised its discretion in denying the change of venue. The record supports the district court's determination that a fair and

---

5. Four articles stated that Fernquist was unarmed, a fact which was disputed at trial. Two articles reported that Sheahan had put his hands in and rolled around in his own urine to destroy evidence. The district court excluded the urine evidence at trial as too prejudicial for admission.

impartial jury could be, and was, impaneled for the trial despite the pretrial publicity. The district judge, the prosecution, and Sheahan questioned the prospective jurors regarding pretrial publicity. The district court struck three individuals for cause because they formed opinions on the case as a result of the media coverage. Of the twelve jurors and two alternates who were seated, only two jurors, one of whom was an alternate, read any newspaper coverage of the incident. Both jurors affirmed that the media coverage would not affect their ability to judge the case on the facts. The State and Sheahan each exercised their twelve peremptory challenges. Moreover, after the jury was seated, Sheahan did not challenge any of the jurors for cause, a fact which has been held to indicate satisfaction with the jury as finally seated. *Winn,* 121 Idaho at 856, 828 P.2d at 885.

The record does not show that the circumstances of this case deprived Sheahan of a fundamentally fair trial. He has not shown that the case was tried in an atmosphere so inflamed by publicity that the indicia of juror impartiality developed during voir dire should be disregarded. See *id.*

## VIII.

## THE DISTRICT COURT DID NOT ERR AS A MATTER OF LAW IN FINDING ADMISSIBLE EVIDENCE THAT SHEAHAN REMOVED BAGS PLACED ON HIS HANDS BY LAW ENFORCEMENT

Sheahan argues that the district court abused its discretion in admitting evidence that he removed plastic bags placed on his hands by law enforcement. He says that the evidence is not relevant and that the danger of unfair prejudice substantially outweighs the probative value of the evidence.

### A. Standard of Review

I.R.E. 404(b) allows evidence of other acts if admitted for the purpose of showing knowledge or consciousness of guilt. The Court engages in a two-tiered inquiry when considering the admissibility of acts of the defendant other than the charged crime. The first test is that the evidence must be relevant. The second inquiry is whether the prejudicial effect outweighs the probative value.

### B. The Event

■ On the day Sheahan was arrested for the shooting incident, he had handcuffs placed on him as well as bags over his hands. The jailer noticed that Sheahan had taken the bags off his hands. The jailer told him that he was not to remove the bags, and then handcuffed Sheahan behind his back instead of in front of his body. The jailer again placed the bags over Sheahan's hands. Later that day, Sheahan poked his fingers through the bags so that his hands were no longer covered by the bags.

Sheahan argues that this evidence is not relevant, because it is undisputed that he shot Fernquist and because the evidence could not show premeditation. However, an inference could be drawn from the incident that Sheahan was trying to destroy evidence. The evidence was relevant. There are other possible explanations, but they go to weight rather than relevance.

The second test is also met. The district court balanced the probative value and the potential for unfair prejudice before admitting the evidence. The district court did not abuse its discretion in finding that the probative value was not outweighed by the danger of unfair prejudice.

## IX.

## THE PROSECUTOR'S STATEMENT DURING CLOSING ARGUMENT THAT DEFENSE COUNSEL HAD MISLED AND LIED WAS IMPROPER BUT DOES NOT CONSTITUTE REVERSIBLE ERROR

Sheahan argues that the prosecution's statements during closing arguments suggesting that defense counsel misled and lied to the jury violated his right to due process and a fair trial. He claims that prosecutorial misconduct requires this Court to vacate his sentence.

## A. Standard of Review

 No objection was stated by the defense or ruling made at the time the objectionable statements were made in the district court. This Court is reviewing the record for fundamental error. A conviction will be set aside for prosecutorial misconduct only when the conduct is sufficiently egregious as to result in fundamental error. *State v. Hairston*, 133 Idaho 496, 507, 988 P.2d 1170, 1181 (1999). Prosecutorial misconduct rises to the level of fundamental error if it is "calculated to inflame the minds of jurors and arouse passion or prejudice against the defendant, or is so inflammatory that the jurors may be influenced to determine guilt on factors outside the evidence." *State v. Babb*, 125 Idaho 934, 942, 877 P.2d 905, 913 (1994). More specifically, "[p]rosecutorial misconduct during closing arguments will constitute fundamental error only if the comments were so egregious or inflammatory that any consequent prejudice could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded." *State v. Cortez*, 135 Idaho 561, 565, 21 P.3d 498, 502 (Ct.App.2001).

## B. The Statements

Sheahan points specifically to statements by the prosecution during closing arguments that defense counsel "tried to hide the facts and to mislead" the jury,[6] as well as a statement that defense counsel "tried to establish something that is not in evidence by his argument. Apparently acceding to that other maxim that if you tell a lie enough times and often enough, people are going to believe it."[7]

Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Martinez*, 136 Idaho 521, 525, 37 P.3d 18, 22 (Ct.App.2001). This includes a right to express how, from each party's perspective, the evidence confirms or calls into doubt the credibility of particular witnesses. *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct.App.1995).

 It is improper, however, for the prosecution to express a personal belief as to the credibility of witnesses, unless the comment is based solely on inferences from evidence presented at trial. *State v. Porter*, 130 Idaho 772, 786, 948 P.2d 127, 141 (1997). Likewise, it is misconduct for the prosecution to make personal attacks on defense counsel in closing argument. See *State v. Page*, 135 Idaho 214, 223, 16 P.3d 890, 899 (2000); *United States v. Young*, 470 U.S. 1, 9 & n. 7, 105 S.Ct. 1038, 1043 & n. 7, 84 L.Ed.2d 1, 8 (1985).

The threshold question is whether Sheahan may claim on appeal that the statements constituted misconduct when he did not object to them at the time they were made. "When a party fails to preserve an issue for appeal via a timely objection, the issue will only be reviewed and reversed on appeal if it constitutes fundamental error." *State v. Lo-*

---

**6.** This first statement in context is as follows:

The *defense last week tried to hide the facts and to mislead you in your search for those facts.* And that began with defendant's opening statement in which [defense counsel] said that Billy Sheahan was cooking breakfast, frying bacon on April 2nd, when the defendant stated that they employed an expert and that expert somehow forced the state to change its story or to differ. Both of those statements by [defense counsel] in his opening statement were proved false by the testimony adduced by the defendant. And that distortion continued and ended with the introduction of Defendant's Exhibit No. 9, the video of the breakfast that was supposedly being cooked, the bacon, the hamburger, left in an open container in a heated house for nine days, defying both the laws of nature and chemistry.

**7.** The second passage, made during Rebuttal Argument, is found in the following context:

Yet, [defense counsel] has, throughout this trial, *tried to establish something that is not in evidence by his argument. Apparently acceding to that other maxim that if you tell a lie enough times and often enough, people are going to believe it.*

In this case, ladies and gentlemen, you shouldn't believe or base a determination on mere assertions. You have to look at the facts. There are no facts that Darrell broke in. In fact, if you look at the testimony of the whole, and I'm not going to go on, the road department personnel, of Roy Carlson, of Penny Fernquist, about Darrell's intent, you will see that he never had an intent to do that.

*velass,* 133 Idaho 160, 167, 983 P.2d 233, 240 (Ct.App.1999). Therefore, this Court must engage in the analysis of whether the conduct constituted fundamental error.

▪ The prosecutor's comments during closing argument that defense counsel had misled and lied to the jury were improper. It would appear that the comments were intended to inflame the minds of jurors and arouse passion or prejudice against the defendant based upon asserted misconduct of defense counsel. See *Babb,* 125 Idaho at 942, 877 P.2d at 913. However, from the context of the statements by the prosecutor it appears that he was analyzing the credibility of defense counsel's evidence and the inferences that defense counsel was making from that evidence. The statements were improper, but no limiting instruction was requested. While improper, they do not rise to the level of a fundamental error warranting reversal.

## X.

## THE JURY INSTRUCTION ON PREMEDITATION FAIRLY AND ADEQUATELY STATED THE LAW

Sheahan argues that the instruction for premeditation misstated the law as it improperly focused the jurors' inquiry on whether his act was a "mere unconsidered and rash impulse" to the exclusion of other acts short of premeditation. Also, he argues that it was reversible error not to include in the instruction that premeditation includes a weighing of the consequences of one's actions.

### A. Standard of Review

The propriety of jury instructions is a question of law over which this Court exercises free review. *Clark v. Klein,* 137 Idaho 154, 156, 45 P.3d 810, 812 (2002).

▪ When reviewing jury instructions, this Court must determine whether "the instructions, as a whole, fairly and adequately present the issues and state the law." *Silver Creek Computers, Inc. v. Petra, Inc.,* 136 Idaho 879, 882, 42 P.3d 672, 675 (2002). An erroneous instruction does not constitute reversible error unless the instructions, when taken as a whole, misled the jury or preju-

diced a party. *Id.* at 882, 42 P.3d at 675; *State v. Nath,* 137 Idaho 712, 716, 52 P.3d 857, 861 (2002). In addition, a defendant may not challenge on appeal the failure to give a jury instruction that was not requested at trial, unless the failure constitutes fundamental error. *State v. Gomez,* 126 Idaho 83, 85, 878 P.2d 782, 784 (1994). Fundamental error is that error which "so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process." *State v. Mauro,* 121 Idaho 178, 180, 824 P.2d 109, 111 (1991) (quoting *State v. Morris,* 116 Idaho 834, 836, 780 P.2d 156, 158 (Ct.App.1989)).

### B. The Instruction

The alleged omissions in the jury instruction definition of "premeditation" were not requested by the defense at trial. The defendant's requested jury instructions included no definition for the term "premeditation." Regardless, the instruction in this case fairly and adequately states the law. Instruction 13(a) included the following definition for premeditation:

> Premeditation means to consider beforehand whether to kill or not to kill, and then to decide to kill. There does not have to be any appreciable period of time during which the decision to kill was considered, as long as it was reflected upon before the decision was made. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not premeditation.

It was not error for the district court to use this instruction. The Idaho Supreme Court has approved the exact premeditation language used in instruction 13(a) as a pattern jury instruction. *See* I.C.J.I. 705; *State v. Avila,* 137 Idaho 410, 414, 49 P.3d 1260, 1264 (Ct.App.2002).

## XI.

## THE DISTRICT COURT DID NOT ERR IN GIVING THE LIMITING INSTRUCTION ON THE INCIDENT BETWEEN SHEAHAN AND OFFICER MCDEVITT

The district court gave a limiting instruction concerning the incident between Sheah-

an and officer McDevitt. This evidence was properly admitted. The limiting instruction was properly given.

## XII.

## THE JURY INSTRUCTION REGARDING THE SCOPE OF AUTHORITY FOR BAIL BONDSMEN DOES NOT CONTAIN A DEFECT, AMBIGUITY, OR GAP

Sheahan argues that the district court abused its discretion in responding to questions submitted by the jury, maintaining that the jury's questions show a defect or gap in the instructions regarding the scope of a bail bondsman's authority, and that the district court's failure to cure this defect constitutes reversible error.

### A. Standard of Review

 The district court's decision whether or not to give further instructions in response to jurors' questions is discretionary. I.C.R. 30(c). Therefore, this Court reviews such a decision under an abuse of discretion standard.

 The Court exercises free review over a district court's determination as to whether jury instructions contain a defect, ambiguity, or gap with respect to its statements on the law. *See Clark,* 137 Idaho at 156, 45 P.3d at 812; *State v. Pinkney,* 115 Idaho 1152, 1154, 772 P.2d 1246, 1248 (Ct.App.1989).

In *Pinkney,* the Court of Appeals outlined a district court's responsibility when responding to jurors' questions:

In general, it is within the trial court's discretion to determine whether, and the manner in which, to respond to a question posed by the jury during deliberations. I.C.R. 30[ (c)]. *See also Dawson v. Olson,* 97 Idaho 274, 543 P.2d 499 (1975). This

grant of discretion is premised on the assumption that the instructions as given are clear, direct and proper statements of the law. *Dawson v. Olson, supra.* Consequently, if a jury expresses doubt or confusion on a point of law correctly and adequately covered in a given instruction, the trial court in its discretion may explain the given instruction or further instruct the jury but it is under no duty to do so. However, if a jury makes explicit its difficulties with a point of law pertinent to the case, thereby revealing a defect, ambiguity or gap in the instructions, then the trial court has the duty to give such additional instructions on the law as are reasonably necessary to alleviate the jury's doubt or confusion. *Dawson v. Olson, supra.* *See also* I.C. §§ 19–2132(a) and 19–2204 (trial court must instruct the jurors on all matters of law necessary for their information).

115 Idaho at 1154, 772 P.2d at 1248.

### B. The Instruction

 The jury provided the district court with the following question: "If a person with a warrant on him is alluding [sic] arrest, can there be an entrance from a bondsman into the place where a suspect is known to be without a search warrant?" The prosecution argued that the court should further instruct the jury as to the inapplicability of the constitutional restrictions to a private person, as it appeared that the jury was confusing the restrictions placed on state actors with those on a private person. Defense counsel objected to any further instruction. The district court found that instruction 15(c), which addressed the authority and means by which a bondsman may apprehend a defendant for which bail was provided, adequately stated the law and represented no gap, defect or ambiguity.[8] Instruction 15(c) provides:

8. The district court stated:

I believe if I get into instructing with regard to search warrants, it is injecting a new issue. 15C does not specifically address the issue of search warrants, but it does state what the rules are. And if I get into search warrants we get into a whole new area of law. And I think the direction to the trial courts from the appellate courts is to rely as much as possible on instructions that have been given.

I don't believe this is a gap. I believe this is an extraneous issue raised by a juror. And there is no way jury instructions can ever cover all extraneous issues that may be raised by a jury. So, I don't think we are really addressing a gap or an inaccurate statement in the instructions. We are trying to address an issue that is

You are instructed that Idaho law provides in part as follows: For the purpose of surrendering the defendant, a person who provided bail for the defendant, at any time before they are finally discharged, and at any place within the state, may themselves arrest him. Where the defendant refuses to surrender himself to the bondsman upon notice from the bondsman to do so, the bondsman may use reasonable and necessary force to effect the arrest, but may not use unnecessary and excessive force.

It was discovered that some jurors did not have instruction 15(c), so the court assured that all jurors obtained a copy. The district court, however, refused to answer further questions as to the interpretation of 15(c), stating essentially that the instruction spoke for itself.[9]

The instruction in this case contains no defect, ambiguity or gap. The instruction reflects statutory and common law authority granted to bail bondsmen. Idaho Code section 19–2925 states, "For the purpose of surrendering the defendant, the bail, at any time before they are finally discharged, and at any place within the state, may themselves arrest him, or by a written authority endorsed on a certified copy of the undertaking, may empower any person of suitable age and discretion to do so." The United States Supreme Court has also described the broad authority granted bail bondsmen when ensuring the surrender of a defendant.

When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another State; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner. In 6 Modern it is said: "The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge." The rights of the bail in civil and criminal cases are the same. They may doubtless permit him to go beyond the limits of the State within which he is to answer, but it is unwise and imprudent to do so; and if any evil ensue, they must bear the burden of the consequences, and cannot cast them upon the obligee.

*Taylor v. Taintor*, 16 Wall. 366, 83 U.S. 366, 371–72, 21 L.Ed. 287, 290 (1872) (footnotes omitted). The jury instruction at issue fairly and accurately reflects the law as established by these sources. In addition, the district

being injected by the jury. And I think particularly as a first response, at any rate, it is appropriate just to refer them back to the instructions themselves.

9. The following colloquy took place:

Juror No. 12: The term "any place," they may go any place in Idaho, does that require a home or is that just any city or is it anywhere?

The Court: Well, again, I think what I need to do is—the law is given to the Court. The Court simply then applies the law. Appellate courts have directed trial courts when there are words in common English language, which would include "any place," trial Courts are not to go further and try to define the question. I would refer you back to the instruction and have you confer and deliberate with the instruction in mind.

Juror No. 6: May I ask the same apply [sic] to the last sentences "necessary force to effect the arrest." Is that bodily force or force, just any kind of force, a thing to get that arrest?

The Court: Again, "force" falls within the what [sic] I would term everyday English language. That's what juries are for, who are to interpret and apply the word "force." And as I say, trial courts are really urged not to further define words that have been used in an instruction. The difficulty is once you give a defining instruction, then there is some question about the word you have used in the definition, and it is kind of hard to draw the line once you start that process. So, again, read all the instructions. Use your common everyday experience and the deliberative process and rely upon the instructions that you do have in answering that specific question.

Juror No. 6: How about a dictionary?

The Court: We do not provide independent sources of information. Again, those kinds of—that's not in evidence; the dictionary is not in evidence. And you are to think about the evidence and what's in evidence.

court did not abuse its discretion in not answering the questions of the jurors. The plain language of the instruction was a sufficient answer to the questions; the requests for further definitions of common terms were properly rejected within the discretion of the trial court.

Sheahan insists that an instruction should have provided the law as to arrests made under state authority.[10] He claims that Fernquist possessed a State of Idaho bench warrant and thus presumably acted under state authority when he attempted to apprehend Sheahan. However, there is no evidence that Fernquist had a bench warrant or was acting under state authority when he went to Sheahan's residence. The record only shows that bench warrants had been issued and were in existence, not that Fernquist had them or was acting under state authority. Therefore, the requested jury instruction should not have been given as it lacked support in the facts of the case. *See State v. Canelo,* 129 Idaho 386, 391, 924 P.2d 1230, 1235 (Ct.App.1996).

Sheahan relies on *Maynard v. Kear,* 474 F.Supp. 794 (N.D.Ohio 1979), in which the court found that bondsmen were acting under state authority, and, thus, subject to the requirements of the Fourth Amendment, when they entered the defendant's residence. However, the evidence in that case clearly showed that the bondsmen not only possessed a state bench warrant, but that throughout the incident they acted or purported to be acting under the authority of that warrant. *Id.* at 800. The court in Maynard in fact affirmed the principle that a bondsman, when making an arrest, "need not obtain a warrant ... [and] can use force, if necessary." *Id.* at 802.

## XIII.

### THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN SENTENCING

Sheahan argues that his sentence of life with a twenty year fixed term is excessive

and unreasonable because he does not have a history of violence, there is no reason to find he would commit this kind of crime again, he could be rehabilitated, he still has a "moral compass," the shooting was relatively spontaneous, and he showed remorse.

### A. Standard of Review

■ Appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett,* 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000).

■ Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus, a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence fixed within the limits prescribed by the statute will ordinarily not be considered an abuse of discretion by the trial court. *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence, however, may represent an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *Id.* at 90, 645 P.2d at 324. A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). A sentence of confinement fixed for longer than necessary to accomplish these purposes is unreasonable. *Id.* at 568, 650 P.2d at 710. Where an appellant contends that the sentencing court imposed an excessively harsh sentence, the Court conducts an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

10. Ironically, at trial it was the prosecution that requested an additional instruction describing the requirements for arrest under state and private authority at trial. The defense counsel actually objected to the prosecution's request. The trial court refused to add such instructions, and therefore in essence granted the defense counsel's objection. The defense now takes the opposite position. The result on this issue could be addressed under an invited error analysis if there were any error.

## B. The Sentence

 When a jury finds a defendant guilty of first degree murder, the district court must impose a life sentence with a minimum determinate term of ten years. I.C. § 18–4004. The district court imposed a life sentence with a minimum fixed term of twenty years, which sentence falls within the statutory guidelines. The district court considered each of the objectives of criminal punishment: protection of society, punishment, deterrence, and rehabilitation. *See Toohill,* 103 Idaho at 568, 650 P.2d at 710. The district court found that the factors of protection of society and rehabilitation did not weigh against Sheahan, because he did not have a history of violence and there was potential for rehabilitation. With regard to punishment, the district court stated, "certainly this is a grave offense, and punishment has to be met." The most important factor, however, was clearly deterrence. The district court stated that deterrence was a major factor, far more important than punishment, because "this was a bondsman basically trying to enforce the law, and the violence was directed against a person who was essentially trying to enforce what society believes is important in order for society to function."

The factors that Sheahan says the district court ignored were in fact considered under the factors of protection of society and rehabilitation, and the district court in fact found these factors weighed in favor of Sheahan. The district court based its decision on the goals of punishment and deterrence. A sentence need not serve all sentencing goals; one may be sufficient. *State v. Waddell,* 119 Idaho 238, 241, 804 P.2d 1369, 1372 (Ct.App. 1991). In addition, deterrence falls under the "primary consideration" in sentencing, which is "the good order and protection of society." *Toohill,* 103 Idaho at 568, 650 P.2d at 710 (quoting *State v. Moore,* 78 Idaho 359, 363, 304 P.2d 1101, 1103 (1956)). Also, the nature of the offense is egregious. Sheahan used lethal force to evade arrest by a person authorized by law to arrest him. The reasons given by the district court for the sentence were sufficient to justify its sentence. The district court did not abuse its discretion in ordering a life sentence with a twenty year fixed term.

## XIV.

## THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING SHEAHAN'S MOTION TO REDUCE HIS SENTENCE

 Sheahan argues that the district court's denial of his motion for reduction of his sentence was an abuse of discretion because his sentence was excessive as originally imposed. A request for a reduction in sentence is essentially a plea for leniency, which may be granted if the sentence originally imposed was unduly severe. *State v. Villarreal,* 126 Idaho 277, 281, 882 P.2d 444, 448 (Ct.App.1994). If the sentence was not excessive when pronounced, and the defendant failed to show that it was excessive in light of new or additional information presented with the motion, then the denial of the motion is not an abuse of discretion. *Id.* at 281, 882 P.2d at 448.

Sheahan presented no new information in support of his motion for reduction of sentence under I.C.R. 35. The sentence was not excessive when pronounced, and the district court's denial of the motion to reduce sentence was not an abuse of discretion.

## XV.

## THERE IS SUBSTANTIAL COMPETENT EVIDENCE TO SUPPORT THE JURY CONVICTION OF FIRST DEGREE MURDER

Sheahan argues that the State did not present credible evidence of premeditation to sustain a conviction of any crime greater than manslaughter.

### A. Standard of Review

 This Court will not overturn a judgment of conviction, entered upon a jury verdict, where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Johnson,* 136 Idaho 701, 704, 39 P.3d 641, 644

(Ct.App.2001). "On appeal, where a defendant stands convicted, the evidence is viewed in the light most favorable to the prosecution and the reviewing court is precluded from substituting its judgment for that of the jury as to the credibility of witnesses, the weight of the evidence and the reasonable inferences to be drawn from the evidence." *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996) (quoting *State v. Gardiner*, 127 Idaho 156, 163, 898 P.2d 615, 622 (Ct.App.1995)).

## B. The Evidence

▇▇▇ For first degree murder to be proven, it must be shown that the killing was "willful, deliberate and premeditated." I.C. § 18–4003(a). Direct evidence of a deliberate and premeditated purpose to kill is not required; such a purpose may be inferred from the facts and circumstances of the killing. *State v. Wolfe*, 107 Idaho 676, 679, 691 P.2d 1291, 1294 (Ct.App.1984). Additionally, premeditation does not require any appreciable space of time between the intention to kill and the killing; rather, it "may be as instantaneous as successive thoughts of the mind." *Carey v. State*, 91 Idaho 706, 710, 429 P.2d 836, 840 (1967) (quoting *State v. Shuff*, 9 Idaho 115, 126, 72 P. 664, 668 (1903)).

Sheahan relies on *State v. Erwin*, 98 Idaho 736, 572 P.2d 170 (1977), for the standard that should be applied when reviewing a jury's conviction of a crime, arguing that if a conviction is based on circumstantial evidence alone, the "circumstantial evidence must be not only consistent and compatible with the guilt of an accused, but it must also be inconsistent with any reasonable theory of his innocence." *Id.* at 740–41, 572 P.2d at 174–75 (quoting *State v. Wilson*, 62 Idaho 282, 284, 111 P.2d 868, 868 (1941)). However, in *State v. Humpherys*, 134 Idaho 657, 661–62, 8 P.3d 652, 656–57 (2000) this Court stated the following:

We agree with the conclusion of the courts from the growing majority of states that in all criminal cases there should be only one standard of proof, which is beyond a reasonable doubt. Therefore, we hold that once the jury has been properly instructed on the reasonable doubt standard of proof, the defendant is not entitled to an additional instruction on circumstantial evidence even when all the evidence is circumstantial. Accordingly, we overturn [*State v. Holder*, 100 Idaho 129, 594 P.2d 639 (1979) ] and its progeny, which held that an additional jury instruction was required in cases based entirely on circumstantial evidence.

Despite the logic of Humpherys, Sheahan says his conviction should be vacated because the circumstantial evidence could have been interpreted in favor of his claim of self-defense or defense of habitat. The argument fails under Humpherys and would fail in any event because the conviction was not based solely on circumstantial evidence. The fact of the killing itself is not based on circumstantial evidence. Sheahan shot Fernquist, and Fernquist is dead. The evidence must be analyzed on the basis of whether there was proof beyond a reasonable doubt, whether that evidence be direct or circumstantial.

▇▇▇ There is substantial evidence supporting the jury's verdict. Fernquist had been looking for Sheahan for several months prior to the shooting. Sheahan had failed to appear for pretrial conferences and had warrants out for his arrest. He should have known that Fernquist or the police were looking for him. Fernquist had spoken with several of Sheahan's friends and neighbors and left business cards with them. Two of Fernquist's business cards were found in the top drawer of Sheahan's dresser. Sheahan would likely have known Fernquist when he entered his residence as they had met before. Sheahan showed his desire to evade legal action against him by ignoring pretrial conference appointments and evading those that posted bail for him, from which the jury could find his willingness to again try to evade arrest when Fernquist appeared. This inference is supported by testimony that material was taped over the windows in Sheahan's residence and bags had been placed over the lights in his residence. The jury could determine from the incident where Sheahan pointed a gun at the door where an officer stood that he had premeditated or planned to kill anyone who sought to apprehend him on the warrants, including Fernquist. The evidence also shows that Sheahan removed bags

from his hands after being taken into custody, despite being told not to by police, from which the jury could find consciousness of guilt and efforts to destroy evidence. The jury could also find from the fact that the pipe lying next to Fernquist's body had no fingerprints on it that Sheahan had put it there to support his claim of self-defense. There is substantial evidence to support the jury verdict.

## XVI.

## THE DISTRICT COURT DID NOT ERR IN DENYING THE MOTION FOR NEW TRIAL

■■■■ Sheahan argues that a new trial should be granted under the "cumulative error" doctrine. The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated, show the absence of a fair trial in contravention of the defendant's constitutional right to due process. *State v. Paciorek*, 137 Idaho 629, 635, 51 P.3d 443, 449 (Ct.App.2002). In order to find cumulative error, this Court must first conclude that there is merit to more than one of the alleged errors and then conclude that these errors, when aggregated, denied the defendant a fair trial. *Lovelass*, 133 Idaho at 171, 983 P.2d at 244. Errors in the admission of evidence will be deemed harmless if the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the errors. *State v. Moore*, 131 Idaho 814, 821, 965 P.2d 174, 181 (1998); *State v. Brazzell*, 118 Idaho 431, 435, 797 P.2d 139, 143 (Ct.App.1990). There is no accumulation of errors in this case.

## XVII.

## CONCLUSION

The judgment and sentence of the district court is affirmed.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN, concur.