850 P.2d 202

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Kenneth BRENNAN, Defendant–
Appellant.**

No. 19289.

Court of Appeals of Idaho.

March 1, 1993.

Petition for Review Denied May 3, 1993.

**554**

Brower & Callery, Lewiston, for defendant-appellant. Thomas W. Callery argued.

Larry EchoHawk, Atty. Gen., Boise, for plaintiff-respondent. Michael A. Henderson, Deputy Atty. Gen., argued.

WALTERS, Chief Judge.

This is an appeal from an order denying a motion to suppress evidence. The sole issue is whether the district court erred when it determined that Kenneth Brennan made a limited request for counsel when in police custody and then voluntarily made statements incriminating him in a robbery, a question Brennan raises after remand from his first appeal in this case. *See State v. Brennan,* 117 Idaho 123, 785 P.2d 687 (Ct.App.1990) (*Brennan I*). We find no error and affirm the district court's order.

The facts in this case may be stated briefly. On June 19, 1987, Brennan drove

two co-defendants to two different gas stations in Lewiston, Idaho, where the co-defendants entered the establishments and attempted to commit robberies while Brennan waited in the vehicle. Brennan was arrested shortly after the second robbery attempt. He was interviewed briefly at the Nez Perce County Jail but refused even to give his name. No further questions were asked at that time.

Three days later, on Monday, June 22, 1987, Detective Greene and Sergeant Lee of the Lewiston Police Department met with Brennan for another interview. Brennan had not been formally charged at the time and would not be until later that afternoon. Detective Greene testified that he explained to Brennan that he wanted to talk about the events of the night of June 19. He read Brennan his *Miranda*[1] warnings from a printed form, which Brennan refused to sign. The detective did not acknowledge, at the designated paragraph on the bottom of the form, Brennan's failure to sign. He also did not ask Brennan if he understood his rights.

According to Detective Greene, Brennan told him that he did not want their conversation recorded and he would not talk about "the night of the shooting" without first speaking with an attorney. Brennan did offer, however, to discuss what he and co-defendant Juan Sanchez had done before the night in question. In the ensuing conversation, Brennan allegedly told the detective that he recently had met Sanchez in the neighboring state of Washington when they were both employed there picking strawberries; that he, Brennan, had been in Lewiston a few years earlier fishing for salmon and thought he could make more money doing that than picking strawberries; that he and Sanchez travelled to Lewiston in Brennan's van, Brennan drove, and they shared gas money; that the license plates and registration for the van were from two different states, South Dakota and Arkansas; that he saw the shotgun owned by Sanchez and used in the robbery; that they had shortened the barrel of the

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

gun in Lapwai, Idaho; and that they had come to Lewiston in the last couple of days.

The court denied Brennan's motion to suppress the background statements, finding that he had been advised of his constitutional rights and had spoken about the events which occurred before June 19, freely, voluntarily and with full understanding of the consequences. However, the court suppressed Brennan's statements regarding the alteration of the shotgun. At trial, Detective Green recounted the other background statements.

A jury found Brennan guilty of two counts each of attempted robbery, conspiracy to commit robbery, first degree burglary, and conspiracy to commit burglary. Brennan raised several issues in his first appeal to this Court; however, the only issue existing here is the denial of the motion to suppress. In *Brennan I*, we found that the district court made general findings about the voluntariness of Brennan's statements, but did not articulate whether Brennan had, on his own, limited his request for an attorney or whether he did so upon the suggestion of the police. We remanded for a specific finding on this point. The court responded with the determination that Brennan had acted on his own and not subject to police coercion; that he limited his request for an attorney to the events of the night of June 19; and that he "spontaneously volunteered" to discuss events which occurred before June 19. Brennan then brought this appeal.

■ Where the trial court has ruled on a motion to suppress evidence on constitutional grounds, our standard of review is one of deference to factual findings unless they are clearly erroneous, but free review of whether constitutional requirements have been satisfied in light of the facts found. *State v. Weber*, 116 Idaho 449, 776 P.2d 458 (1989); *State v. Rusho*, 110 Idaho 556, 716 P.2d 1328 (Ct.App.1986).

■ More specifically, in a suppression hearing, the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence, and draw factual inferences, is vested in the trial court. *State v. Kirkwood*, 111 Idaho

623, 726 P.2d 735 (1986), *citing People v. Lawler*, 9 Cal.3d 156, 107 Cal.Rptr. 13, 507 P.2d 621 (1973). The findings of the trial court should be overturned only if not supported by substantial evidence. *Id., citing State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336 (1983), *cert. den. Mitchell v. Idaho*, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983). All presumptions favor the trial court's exercise of the power to weigh the evidence and draw factual inferences and the trial court's express or implied findings on the matter. *Id.*

■ As we stated in *Brennan I*, the Fifth Amendment to the U.S. Constitution guarantees the right to have counsel present during custodial interrogation. *Brennan*, 117 Idaho at 124, 785 P.2d at 688, *citing Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant can invoke this right in any manner and at any stage of the process. *Id.* The police must scrupulously honor the defendant's right to cut off questioning. *Id., citing Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). When a defendant has invoked his right to counsel, he is not subject to further interrogation until counsel has been made available to him, unless he initiates further communication with the police. *Id., citing Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). A narrow exception is recognized when a defendant limits his request for counsel to a certain subject area or type of interrogation and expresses— without prompting by the police—a willingness to discuss other matters. *Id., citing Connecticut v. Barrett*, 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). The state has the burden to show by a preponderance of the evidence that, under the totality of the circumstances, the defendant has knowingly, intelligently, and voluntarily waived his right to counsel. *State v. Culbertson*, 105 Idaho 128, 666 P.2d 1139 (1983); *Mitchell, supra*, 104 Idaho at 497, 660 P.2d at 1340.

In *Brennan I*, we found it undisputed that Brennan had invoked his right to counsel after being read his *Miranda* rights and that during the interview he refused to

discuss the events of the night of June 19, 1987. However, he did discuss related events which occurred before that day. On remand, after weighing the credibility of the parties and the evidence, including Brennan's affidavit asserting that he did not waive his rights or speak voluntarily, the district court found a valid waiver.

Brennan argues that *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), establishes that the court erred. In that case, Edwards had been arrested and charged with several crimes. When first taken to the police station he was informed of his *Miranda* rights, which he said he understood. He stated he was willing to be questioned and then denied involvement in the crimes. Thereafter, he stated that he wanted an attorney before "making a deal." At that point the questioning ceased and Edwards was taken to the county jail.

The next morning, the detectives attempted to interview Edwards a second time. He told the detention officer sent to retrieve him that he did not want to speak to anyone. The officer told Edwards that "he had" to talk and took him to meet the detectives. The detectives again read Edwards his rights and allowed him to listen to the taped statement of an alleged accomplice who had implicated Edwards in a crime. Edwards said he would tell the detectives "anything you want to know," so long as it was not tape recorded. He then implicated himself in the crime. Edwards moved to suppress his statement, a motion which was ultimately denied.

The United States Supreme Court concluded that denying the motion was in error because the wrong standard was used to determine waiver where Edwards had specifically invoked his right to counsel. The Court stated that the state court had failed to "focus on whether Edwards understood his right to counsel and intelligently and knowingly relinquished it." *Edwards,* 451 U.S. at 484, 101 S.Ct. at 1884. The Court stated that waivers must not only be voluntary,

> but must also constitute a knowing and intelligent relinquishment or abandon-

ment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

*Id.* 451 U.S. at 482, 101 S.Ct. at 1884, *citing Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

The Court also held that when an accused has invoked his right to have counsel present during questioning, a valid waiver cannot be established by showing only that he responded to further police-initiated questioning even if he has been advised of his rights. *Id.* Where the defendant has invoked his right to counsel he is not subject to further questioning "until counsel has been made available to him, unless the [defendant] himself initiates further communication, exchanges, or conversations with the police." *Id.* at 485.

Because Edwards had requested counsel, expressed his desire not to talk to the police—but was told he had to—and because the Arizona courts had applied the wrong standard for determining the validity of the waiver, the Court found that Edwards had not waived his right to counsel.

The state argues, however, that the instant case is controlled by the Court's subsequent decision in *Connecticut v. Barrett,* 479 U.S. 523, 107 S.Ct. 828, 93 L.Ed.2d 920 (1987). There the Supreme Court held that the Fifth Amendment did not require suppression of an oral confession when, after the defendant had been read his *Miranda* rights, he agreed to talk to the police but would not make a written statement without counsel present. The Court's decision was based on the following facts.

After Barrett was arrested he was taken to the police station where he was informed of his rights under *Miranda* and where he signed an acknowledgment that he had received the warnings. He stated that he would not give the police a written statement but would speak with them. Thirty minutes later, the police approached him a second time and again read him his rights. Barrett again signed an acknowledgment form and stated that he understood his

rights, that he would not give a written statement without an attorney present, but had "no problem" talking about the incident. He then admitted his involvement in the crime under investigation. Unfortunately for the police, the tape recorder they used to preserve the statement malfunctioned, so they held a third interview. Barrett again was advised of his rights and stated he would discuss the incident but would not put anything in writing until his attorney was present. When the police discovered again that their tape recorder had malfunctioned, one of the attending officers wrote down what he remembered of Barrett's statement.

■ The Court held that Barrett had expressed his willingness to talk to the police about the crime for which he was suspected. The Court agreed with the trial court's finding that Barrett had voluntarily waived his rights—Barrett had in fact testified that he understood his rights—and that there was no evidence that Barrett was "threatened, tricked, or cajoled." *Barrett,* 479 U.S. at 527, 107 S.Ct. at 831. The Supreme Court stated that the fundamental purpose of *Miranda* was "to assure that *the individual's right to choose* between speech and silence remain[ed] unfettered" by government compulsion throughout the interrogation process. *Id.* 479 U.S. at 528, 107 S.Ct. at 831 (emphasis in original). Although questions of waiver require courts to give a broad interpretation to a defendant's request for counsel, interpretation is only required where the defendant's words, understood as ordinary people would understand them, are ambiguous. *Id.* The Court further held that Barrett's intentions were clear and unambiguous, and they were honored by the police.

The Court also rejected Barrett's attempt to distinguish between oral and written statements, even though the distinction indicated Barrett's incomplete understanding of the consequences of his act of speaking to the police. Barrett argued that his misunderstanding should have made his limited invocation of his right to counsel applicable to all of his statements. The Court stated that *Miranda* makes clear that any statements made by an accused may be used against him.

■ We find *Barrett* to be controlling in this case. As the district court indicated, Brennan had been read his rights and apparently understood them, a fact we may infer from his request to have counsel present before he spoke of the events of the night of June 19. Practically in the same breath as his refusal to speak of those events, Brennan agreed to talk about related background events. The police complied with his requests not to record the conversation and did not ask questions about the night of June 19. Detective Greene limited the conversation to that allowed by Brennan—where he was before the night of the robberies, how he met Juan Sanchez, how they got to Lewiston, and the fact that Sanchez owned a shotgun which he carried with him to Lewiston. The court was not persuaded that Brennan's request for counsel was ambiguous. We also are not persuaded.

Further, the record establishes that when Brennan was arrested he was thirty or thirty-one years old, had been born and raised in the United States, and he spoke and understood the English language well. In fact, he was articulate in his comments to the court and spoke intelligently at sentencing. He was not a stranger to the criminal justice system. He had a criminal record dating to 1976, including seven arrests and several convictions for misdemeanor and felonies, including breaking and entering, theft, driving under the influence and resisting arrest and deceiving an officer. When arrested in the instant offense, he was wanted in Arkansas on a fugitive warrant for a parole violation. The district court determined that Brennan "knew what he was doing" when he agreed to speak to the police. Accordingly, with the district court's ability to judge Brennan's knowledge, characteristics and credibility, we cannot say that this determination was wrong.

■ Brennan argues, however, that his refusal to sign the waiver form, and Detective Greene's failure to acknowledge Brennan's refusal in writing, invalidates the

finding that he offered to speak without counsel present. *Miranda* rights must be received and understood before there can be a valid waiver. WILLIAM E. RINGEL, SEARCHES AND SEIZURES, ARRESTS AND CONFESSIONS § 28.3(b)(2) (2nd ed. 1992). However, *Miranda* does not require a written or express waiver. *Mitchell, supra,* 104 Idaho at 497–98, 660 P.2d at 1340–41.

▆▆ Brennan maintains that a defendant cannot knowingly and intelligently waive his right to counsel and later make statements that tie him to criminal events if he does not realize that the statements may be incriminating. Although the district judge initially expressed concern that Brennan apparently did not want "to talk about anything that would incriminate him," the judge ultimately found that Brennan voluntarily and intelligently waived his right to counsel and spoke to the police. At the time he was interviewed by the police, Brennan apparently thought that the background facts he revealed were not incriminating. His counsel made a similar observation when discussing with the court the issue of whether to suppress statements about the shotgun. Counsel stated: "I think that the record left the impression to both the Court and to Counsel that [Brennan's statements] were more of a background nature and not of a highly accusatory or incriminating nature." As the Supreme Court held in *Barrett,* the fact that a defendant's decision to speak out may seem illogical or unwise is irrelevant. *Barrett,* 479 U.S. at 530, 107 S.Ct. at 832. The Court "has never embraced the theory that a defendant's ignorance of the full consequences of his decision vitiates their voluntariness." *Id.* 479 U.S. at 530, 107 S.Ct. at 832, *citing Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985).

Based on the foregoing, the denial of Brennan's motion to suppress is affirmed.

SWANSTROM, J., and SILAK, Acting Judge, concur.