39 P.3d 661

STATE of Idaho, Plaintiff–Respondent,

v.

Florence LAW, Defendant–Appellant.

No. 26587.

Court of Appeals of Idaho.

Jan. 11, 2002.

Molly J. Huskey, Interim State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

LANSING, Judge.

Florence Law was convicted of one count of lewd and lascivious conduct with a minor for having sexual intercourse with her grandson who was under the age of sixteen. Before trial, Law moved to suppress post-*Miranda* statements that she made to the police. The district court denied the motion. Law also filed a motion in limine to exclude evidence that she had participated in the sexual molestation of her daughter when her daughter was a minor. However, the district court admitted the evidence. On appeal, Law challenges both of these rulings.

## I.

## BACKGROUND

Law was charged with lewd and lascivious conduct, Idaho Code § 18–1508, for having sexual intercourse with her grandson. According to the victim, the molestation began when he was twelve years old and continued for a period of three years. The victim's trial testimony described the charged offense as follows. In 1993, when the victim was twelve and Law was sixty-three, the victim came to stay with his grandparents for the summer. One night, shortly after the victim's arrival, Law's husband, who was naked at the time, roused the victim from sleep and asked him to come into his grandparents' bedroom to give them massages. The victim went to the bedroom and massaged both grandparents' backs. After the massages, the victim went back to bed, but his grandfather returned and asked the victim to go back to the bedroom. Once there, the grandfather told the victim to lie on the bed next to Law, who was naked and lying on her side. Law moved over in order to give the victim some room on the bed. After the victim lay down, the grandfather fondled the victim's penis until it became erect. The grandfather then rolled the victim onto his side to face Law's backside. Law parted her legs and her husband inserted the grandson's penis into her vagina. The grandson then had sexual intercourse with Law.

According to the victim, this form of molestation by Law and her husband continued throughout that summer visit and during visits to his grandparents' home during the next two summers. The sexual contact did not stop until the end of the summer of 1996 when the victim was permanently moved to a juvenile facility.

In 1997, Law's grandson reported the incidents of sexual intercourse to authorities, and Law and her husband were charged with lewd conduct. In pretrial motions, Law sought to suppress statements she had made to police and sought to preclude the State from introducing evidence that Law's daughter (the victim's aunt) had been sexually molested by Law and her husband. These motions were unsuccessful, and upon a jury trial, Law was convicted of lewd and lascivious conduct with her grandson.

## II.

## ANALYSIS

### A. *Miranda* Waiver

■ We first consider Law's challenge to the admission of statements she made to the police during custodial interrogation. When reviewing the trial court's ruling on a motion to suppress evidence on constitutional grounds, we defer to the trial court's factual findings if they are supported by substantial evidence, but we exercise free review in determining whether, on those facts, constitutional standards have been satisfied. *State v. Cheatham*, 134 Idaho 565, 574, 6 P.3d 815, 824 (2000); *State v. Weber*, 116 Idaho 449, 452, 776 P.2d 458, 461 (1989); *State v. Brennan*, 123 Idaho 553, 555, 850 P.2d 202, 204 (Ct.App.1993); *State v. Nobles*, 122 Idaho 509, 512, 835 P.2d 1320, 1323 (Ct.App.1991).

### 1. Refusal to sign notification of rights form

Law was interrogated at the county jail in a tape recorded interview. An officer informed Law of her *Miranda* rights and then asked if she understood those rights. Law responded affirmatively. The officer then asked Law to sign a "notification of rights" form that included a waiver of the rights. The following exchange then occurred:

| Officer 1: | Sign this if you would like to talk about this situation. |
| Law: | I would like to know what's going on, and who's doing it. |
| Officer 1: | I need you to sign that, then we can talk. |
| Law: | That would be pushing me to sign papers. |
| Officer 1: | This is your copy that you understand your rights. |
| Law: | As long as I'm not being ... |
| Officer 2: | All you're signing is acknowledging that he read you your rights. That's all you're doing. That doesn't mean anything else at all, and that you're willing to talk to him now. You could stop talking to him at any time. |

Law then signed the form.

Before the officers began asking her questions about the charged offense, they reminded Law several times that she could terminate the interview at any point. The officers also asked Law whether she had memory problems and whether she was currently on any medication. Law denied having memory difficulties and said that she was taking a drug that had been prescribed for kidney problems. When asked if the medication was "mind altering," Law told the officers that it did not affect her mental ability. The officers then began the interrogation, which continued for approximately thirty minutes, until Law terminated the interview on her own initiative. During the interrogation, Law said that if sexual intercourse with her grandson occurred, she must have been asleep at the time or must have thought that the other participant was her husband.

Law contends that her initial expression of reluctance to sign the notification of rights form implicitly expressed an unwillingness to speak to the officers and constituted an invocation of her right to remain silent. According to Law, because of this invocation of her right of silence, the officers were obligated to then cease their interrogation.

■ After a suspect has been advised of the right to remain silent and the right to counsel pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), police may not proceed with questioning if the suspect indicates a desire to remain silent. *Id.* at 473–74, 86 S.Ct. at 1627–28, 16 L.Ed.2d at 722–23; *State v. Rhoades*, 119 Idaho 594, 602, 809 P.2d 455, 463 (1991). An individual's right to cut off questioning is grounded in the Fifth Amendment and must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 103, 96 S.Ct. 321, 326, 46 L.Ed.2d 313, 321 (1975).

■ Nevertheless, police officers are not required to cease questioning unless the invocation of *Miranda* rights is clear and unequivocal. In *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), the United States Supreme Court held that in order to effectively invoke the right to counsel, a suspect must "articulate

725

his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. . . . If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id.* at 459–60, 114 S.Ct. at 2355, 129 L.Ed.2d at 371–72. Several federal courts of appeal have held that the same standard should be applied to a suspect's references to the right to cut off questioning or the right to silence. *United States v. Banks,* 78 F.3d 1190, 1197 (7th Cir.1996); *United States v. Johnson,* 56 F.3d 947, 955 (8th Cir.1995) (relying heavily on pre-*Davis* circuit law); *Coleman v. Singletary,* 30 F.3d 1420, 1424 (11th Cir.1994). We also implicitly deemed the *Davis* rule applicable to an assertion of the right to silence in *State v. Whipple,* 134 Idaho 498, 502–04, 5 P.3d 478, 482–484 (Ct.App.2000). Thus, a suspect's ambiguous or equivocal comment that does not plainly express a desire to remain silent or to terminate the interview will not obligate police to cease questioning.

Further, the refusal to sign a waiver form, standing alone, does not amount to an invocation of *Miranda* nor prevent a valid waiver of *Miranda* rights. In *North Carolina v. Butler,* 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), the United States Supreme Court held that where a suspect refused to sign a written waiver form after being orally advised of his *Miranda* rights, but nevertheless agreed to speak with officers, the suspect's rejection of the written waiver did not preclude a finding that the suspect had waived his rights. As noted by the Fifth Circuit Court of Appeals in *United States v. McDaniel,* 463 F.2d 129, 135 (1972), "A refusal to sign a waiver may indicate nothing more than a reluctance to put pen to paper under the circumstance of custody. . . . [A] detainee may make statements that are quite voluntary without signing a written waiver."

Applying these standards, the record fully supports the district court's determination that Law did not invoke her right to silence when she expressed reservations about signing the notification of rights form.

Law's comments were not an unequivocal invocation of her right to remain silent but appear to be an effort to gain information about the purpose of the form before she signed it—and perhaps an indication of "reluctance to put pen to paper." Before Law began responding to officers' inquiries about the charged offense, she had been fully informed of her *Miranda* rights and acknowledged that she understood them. Because Law's statements about the form were ambiguous and did not express a desire to terminate the interview, they did not obligate the officers to cease the interrogation.

### 2. Use of prescription medication

Law also asserts that she lacked the capacity to make a knowing and intelligent waiver of her rights because she was under the influence of a prescription medication when she was interrogated.

A waiver of *Miranda* rights will be deemed valid only if it was made knowingly, voluntarily, and intelligently. *Oregon v. Elstad,* 470 U.S. 298, 304, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222, 228–29 (1985); *State v. Fee,* 135 Idaho 857, 26 P.3d 40, 46 (Ct.App.2001). After hearing the evidence presented on Law's suppression motion and listening to the audiotape of the interrogation, the district court rejected Law's contention of mental impairment and found that she was not mentally incapacitated. The evidentiary record supports this determination. The audiotape upon which the district court relied shows that Law was lucid, clear in her speech, and appropriately responsive in her conversation with the officers. Law stated that she understood the proceedings and wished to continue with the interview. In the conversation between Law and the police officer before the questioning began, Law said that the medication did not affect her mental acuity. Law presented no evidence at the suppression motion to substantiate her claims that the medication affected her mental capacity. Therefore, the district court's finding that Law's use of a prescription medication did not prevent her from making a voluntary, knowing, and intelligent waiver of her *Miranda* rights will not be disturbed.

## B. Evidence of Molestation of Another Victim

Law's daughter testified that on numerous occasions, when she was between the ages of nine and fourteen, Law held the daughter down, sometimes covering her mouth so she could not scream, while Law's husband (the daughter's father) had sexual intercourse with the daughter. Law contends that this testimony should have been excluded under Idaho Rule of Evidence 404(b), which prohibits use of evidence of an individual's uncharged misconduct to demonstrate a trait of character and show that the person acted in conformity with that trait. As Law acknowledges, however, evidence of other crimes, wrongs or acts is admissible for other purposes, including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." I.R.E. 404(b).

 When the evidence of a defendant's other crimes, wrongs, or acts is offered, a two-part standard must be met. First, the evidence must be relevant to a material and disputed issue in the case; and second, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *State v. Moore,* 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991). *See also* I.R.E. 403. "On appeal, we exercise free review of the trial court's determination of relevancy, but we use an abuse of discretion standard of review when considering the trial court's balancing of the probative value of the evidence against the danger of unfair prejudice." *State v. Williams,* 134 Idaho 590, 592, 6 P.3d 840, 842 (Ct.App.2000).

 The district court held that the testimony of Law's daughter was admissible to show intent, absence of mistake, and knowledge on Law's part in the commission of the charged offense against her grandson. We agree with that assessment. The State bore the burden to prove that Law knowingly participated in the sexual molestation of her grandson "with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires" of Law or those of the child or of a third person. I.C. § 18–1508. The nature of the molestation reported by the victim in this case—with the grandfather being the active participant and Law lying passively while the grandfather inserted the child's penis into Law's vagina—was of such a nature that there was an issue as to whether Law knowingly participated or was asleep and unaware of the activity. Indeed, during her police interview, Law admitted that her grandson may have had intercourse with her but claimed that she either slept through the intercourse or believed that she was having intercourse with her husband rather than her grandson because the bedroom was dark. Therefore the testimony of Law's daughter that Law had in the past been a willing and vigorous participant in sexual assaults on a child, in concert with her husband, had substantial probative value addressing the issue of whether Law knowingly and intentionally committed the charged offense.

In addition, the daughter's testimony was relevant to corroborate the grandson's testimony. It is by now well established in Idaho law that, in view of the particular proof problems often presented in cases of sexual offenses against children, evidence of the defendant's other sex offenses against minor victims may be relevant to substantiate the child victim's testimony. The Idaho Supreme Court made this clear in *Moore:*

> Although corroboration is no longer mandatorily required in all sex crime cases, corroborating evidence may still be relevant, particularly in sex crime cases involving minor victims. Corroborative evidence in sex crime cases involving youthful victims is often times necessary to establishing the credibility of a young child. Too often the determination of the case rests strictly upon establishing that the victim's testimony is more credible than that of the alleged perpetrator.
>
> . . . .
>
> Evidence of similar acts of sexual misconduct between a defendant and the victim or between the defendant and another witness is admissible for corroboration of the victim's testimony in sex crime cases.

[*State v. Schwartzmiller,*] 107 Idaho at 93, 685 P.2d at 834.

. . . .

Evidence of all the incidents of abuse, taken together, may provide an evidentiary plan or pattern that tends to make the alleged incidents more plausible and probable. Accordingly, we hold that the district court did not err in denying Moore's motion in limine.

*Id.* at 745–46, 819 P.2d at 1145–46 (some citations omitted). *See also State v. Cross,* 132 Idaho 667, 670–71, 978 P.2d 227, 230–31 (1999); *State v. Tolman,* 121 Idaho 899, 904, 828 P.2d 1304, 1309 (1992); *State v. McGuire,* 135 Idaho 535, 539, 20 P.3d 719, 723 (Ct.App.2001).

 Law argues that her daughter's testimony is not relevant for the foregoing purposes because the alleged abuse of the daughter was so remote in time—approximately twenty years prior to the charged offense—and because the described molestation is dissimilar with respect to the alleged activity of Law and the gender of the child victim. We, however, agree with the district court's determination that these factors do not render the testimony irrelevant. The lapse of time between the alleged victimization of Law's daughter and the offense against the grandson, standing alone, does not necessarily make the daughter's testimony inadmissible. The Idaho Supreme Court has stated that the issue of remoteness generally goes to the weight of the evidence, not to its admissibility. *Moore,* 120 Idaho at 746, 819 P.2d at 1146. "Remoteness and similarity must be considered together because the two concepts are so closely related; ... a prior bad act, despite its remoteness, may still be relevant if it is strikingly similar to the charged offense. Conversely, less similarity may be required where the prior act is closer in time to the charged incident." *McGuire, supra* (quoting *Fisher v. State,* 641 N.E.2d 105 (Ind.Ct.App.1994)). Thus, in *McGuire,* we held that uncharged sexual molestations of minors, some of which were alleged to have occurred twenty-three years before the charged offense, were not too remote to be relevant in view of the similarity of the alleged incidents. *Id.*

We acknowledge that there are differences between Law's alleged acts with her daughter and those claimed by her grandson due to the difference in the gender of the victims, but there are also striking similarities. Foremost among them is the fact that as to both victims, Law acted jointly with her husband to effectuate an act of sexual intercourse with a child. In addition, the molestations occurred when the children were of similar ages, and the victims in both cases were family members residing, at least temporarily, in the home of Law and her husband. We therefore conclude that the district court did not err in holding that the daughter's testimony was relevant.

 With respect to the balancing of the testimony's probative value against the risk of unfair prejudice, we find no abuse of the trial court's discretion. The district court clearly recognized the potential prejudicial effect of the daughter's story, but held that its probative value was great and was not outweighed by the danger of unfair prejudice. In reaching this conclusion, the district court perceived the issue as one of discretion, balanced the prejudicial effect of the daughter's testimony against its probative value and came to a reasoned conclusion. Accordingly, we hold that the district court did not err in admitting the testimony of Law's daughter regarding uncharged incidents of sexual misconduct.

### III.

### CONCLUSION

The district court's findings that Law did not invoke her *Miranda* rights by her initial reluctance to sign the notification of rights form and that Law knowingly, voluntarily, and intelligently waived her *Miranda* rights is supported by the evidence. We therefore affirm the district court's denial of Law's motion to suppress statements she made in the police interview. We also conclude that the district court correctly admitted the testimony of Law's daughter. Therefore, the judgment of conviction is affirmed.

Chief Judge SCHWARTZMAN and Judge PERRY concur.