179 P.3d 346

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Mariano PEREZ, Jr., Defendant–Appellant.**

Nos. 33003, 33004.

Court of Appeals of Idaho.

Feb. 20, 2008.

Review Denied July 31, 2008.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

LANSING, Judge.

The principal issue presented by this appeal is whether the district court erred in denying motions to suppress incriminating statements that Mariano Perez, Jr., made to law enforcement officers, and later to television reporters, after being informed of his

*Miranda* rights. Perez contends that he invoked his right to remain silent and his right to counsel and that these rights were violated when law enforcement authorities resumed interrogating him and, later, when television reporters were allowed to interview him. We affirm.

## I.

## BACKGROUND

On February 6, 2005, Perez threatened his estranged girlfriend and three other persons with a handgun. He was charged with three counts of aggravated assault, Idaho Code §§ 18–901(a or b), –905(a), one count of felony injury to children, I.C. § 18–1501(1), and one count of unlawful possession of a firearm, I.C. § 18–3316, and a warrant was issued for his arrest.

Three days later, Officer Allen Williamson saw Perez commit a traffic infraction. Williamson attempted a traffic stop but Perez fled, eventually crashing his vehicle. Perez then exited the vehicle and ran, with Williamson in pursuit. When Williamson caught up to him, Perez pulled a gun and shot the officer multiple times from point-blank range. Williamson survived his injuries.

Perez fled to Reno, Nevada, where he was apprehended by local authorities. Perez told Nevada police that he wished to speak to Idaho authorities, so on February 12, two Idaho officers went to the Washoe County jail in Reno to conduct a videotaped interview of Perez. After Perez was informed of his *Miranda* rights, however, he said that he would "rather wait" to talk to the officers. When the officers said, "You said you want to wait, so ...," Perez responded, "Yeah, I think I need advice, man." The Idaho officers then left the room. Less than an hour later, a Reno police officer entered the interview room and spoke to Perez, saying that he knew Perez was hurting and that Perez would feel better if he talked. Perez then told the Reno officer to call the Idaho officers back because he now wanted to speak to them. The Idaho officers then returned and interviewed Perez, who made incriminating statements.

The next day, a television reporter from Idaho asked Washoe County jail officials to convey to Perez a request for an on-camera interview. Perez agreed and signed a consent form acknowledging that the Washoe County Sheriff's Office would also record the interview and that it could be used against him in legal proceedings. The interview was conducted, with uniformed Washoe County deputies present for security purposes. On February 14, a Reno television reporter also interviewed Perez under the same circumstances.

As a consequence of Perez's encounter with Officer Williamson, he was charged with aggravated battery on a law enforcement officer, Idaho Code §§ 18–903(a), –915(b), – 907(1)(b), felony eluding, I.C. § 49–1404, and unlawful possession of a firearm, I.C. § 18–3316. Perez filed a motion to suppress the statements he made to the Idaho officers at the Reno jail and his statements to the television reporters, asserting that his Fifth Amendment rights had been violated. The district court denied the motion, holding that Perez never unequivocally invoked his right to silence or requested counsel and that the television reporters were not acting as agents of the police when they interviewed Perez.

In a consolidated proceeding, Perez pleaded guilty to the charge of aggravated assault on his estranged girlfriend and to aggravated battery on Officer Williamson and admitted the State's allegation that he was subject to sentence enhancements as a persistent violator, I.C. § 19–2514. In exchange, the remaining charges were dismissed. Perez's plea in the aggravated battery case reserved the right to appeal the denial of his suppression motion. The district court imposed concurrent fixed life sentences for the offenses. Perez's subsequent Idaho Criminal Rule 35 motions to reduce the sentences were denied. Perez appeals in both cases.

## II.

## DISCUSSION

### A. Motion to Suppress Statements Made to the Officers and Press

Perez first contends that the district court should have suppressed state-

ments that he made to law enforcement and television reporters at the jail in Nevada because the statements were obtained in violation of his Fifth Amendment rights to counsel and to remain silent as enunciated by the United States Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). These rights apply whenever an accused is subject to custodial interrogation by law enforcement officers. *Id.* If an individual in custody invokes the right to remain silent, that invocation must be scrupulously honored, police questioning must cease, and authorities may reinitiate interrogation only after a "significant period of time" has passed. *Michigan v. Mosley*, 423 U.S. 96, 104–06, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313, 321–22 (1975); *State v. Blevins*, 108 Idaho 239, 242, 697 P.2d 1253, 1256 (Ct. App.1985). A request for counsel likewise must be scrupulously honored, and interrogation may not resume until an attorney is present or the suspect himself reinitiates the conversation. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378, 384 (1981). *See also Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). If the right to counsel has been invoked, the police may not reinitiate interrogation of the detainee in the absence of an attorney. *Minnick v. Mississippi*, 498 U.S. 146, 153–54, 111 S.Ct. 486, 491–92, 112 L.Ed.2d 489, 497–98 (1990); *State v. Tapp*, 136 Idaho 354, 360, 33 P.3d 828, 834 (Ct.App.2001).

In his suppression motion, Perez contended that he sufficiently invoked his *Miranda* rights at his initial meeting with the Idaho officers by saying that he would rather wait and that he needed advice. His rights were therefore violated, he maintains, when the Nevada officer disregarded those invocations by subsequently interrogating him and urging him to talk, when Idaho authorities resumed interviewing him, and when Nevada authorities permitted and monitored the television news interviews, allegedly utilizing the reporters as agents of law enforcement. The district court concluded that suppression was not warranted because Perez had not unequivocally invoked either the right to silence or the right to counsel.

In *Miranda*, the United States Supreme Court indicated that a police interrogation must terminate when a person in custody indicates "in any manner" that he wishes to consult with an attorney. *Miranda*, 384 U.S. at 444–45, 86 S.Ct. at 1612–13, 16 L.Ed.2d at 706–07. Subsequently, however, the Court required more, holding that "the suspect must unambiguously request counsel" before officers will be obligated to terminate questioning. *Davis*, 512 U.S. at 459, 114 S.Ct. at 2355, 129 L.Ed.2d at 371. The *Davis* Court explained that an objective standard applies in that the detainee:

> must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect. *See Moran v. Burbine*, 475 U.S. 412, 433 n. 4, 106 S.Ct. 1135, 1147 n. 4, 89 L.Ed.2d 410[ 428 n.4] (1986) ("[T]he interrogation must cease until an attorney is present *only* [i]f the individual states that he wants an attorney").

*Id.* The Court then held that the defendant's statement in that case, "Maybe I should talk to an attorney," was not an unequivocal request for counsel that obligated the officers to stop the interrogation.

Following *Davis*, the Idaho Supreme Court considered whether police violated a minor's *Miranda* rights by continuing to question him after his mother asked an officer whether she needed an attorney for her son and also said, "The *Miranda* rights state that he has a right to one." The Court held that although a minor's parent may assert the right to counsel on behalf of a child, these comments by the mother did not do so because they were not a clear and unambiguous request for counsel. *State v. Doe*, 137 Idaho 519, 525, 50 P.3d 1014, 1020 (2002). In *State v. Eby*, 136 Idaho 534, 537, 37 P.3d 625, 628 (Ct.App.2001), the suspect's statement, "I've got an attorney," was likewise held not to be an unequivocal invocation of the right to counsel.

Measured against the standard of clarity required by these precedents, Perez's claim that he unequivocally invoked his right to counsel is without merit. His statement to the officers was, "Yeah, I think I need advice, man." As Perez did not directly refer to a desire to see to an attorney, he may have been expressing a wish for advice from family, friends, a clergyman, or other advisor. Viewed objectively, Perez's statement would not necessarily be understood by a reasonable police officer as a present request for an attorney.

■ A suspect's invocation of the right to remain silent also must be clear and unequivocal. *State v. Law,* 136 Idaho 721, 725, 39 P.3d 661, 665 (Ct.App.2002); *State v. Whipple,* 134 Idaho 498, 502–04, 5 P.3d 478, 482–84 (Ct.App.2000). Here, Perez stated that he would "rather wait" to talk to the officers. This statement was not a clear indication that Perez was refusing to talk, but rather that he wanted to postpone the conversation. A statement that expresses only an unwillingness to discuss the matter *at the present time* is insufficient to constitute an unambiguous assertion of the right to remain silent because it leaves open the possibility that the suspect will be amenable to speaking with police at a future time. *See United States v. Al–Muqsit,* 191 F.3d 928, 936–37 (8th Cir.1999); *Commonwealth v. Leahy,* 445 Mass. 481, 838 N.E.2d 1220, 1228 (2005); *State v. Ganpat,* 732 N.W.2d 232, 240 (Minn.2007); *People v. Caruso,* 34 A.D.3d 860, 822 N.Y.S.2d 825, 827–28 (N.Y.2006); *State v. Holcomb,* 213 Or.App. 168, 159 P.3d 1271, 1278–79 (2007); *State v. Sabetta,* 680 A.2d 927, 932 (R.I.1996).

Thus, the district court correctly held that Perez did not unequivocally invoke either his Fifth Amendment right to counsel or his right to silence. Consequently, law enforcement officers were not precluded from resuming the interview.

Perez's argument for suppression of his statements to television reporters on the theory that they were acting as agents of law enforcement, like his claim for suppression of statements to officers, is predicated upon a previous invocation of his *Miranda* rights. Our determination that Perez did not unambiguously assert either his right to remain silent or his right to counsel disposes of all the suppression claims. We therefore need not address his argument that the reporters were acting as state agents when they conducted the interviews.

## B. Sentences

■ Upon Perez's guilty pleas to aggravated assault on his former girlfriend and aggravated battery upon a law enforcement officer, the district court imposed concurrent fixed life sentences, inclusive of persistent violator sentence enhancements. Perez subsequently filed Idaho Criminal Rule 35 motions to reduce his sentences, which were denied. Perez contends that the district court abused its discretion by imposing excessive sentences and by denying Rule 35 relief from those sentences.

■ The objectives of sentencing, against which the reasonableness of a sentence is to be measured, are the protection of society, the deterrence of crime, the rehabilitation of the offender and punishment or retribution. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). In examining the reasonableness of a sentence, we conduct an independent review of the record, focusing on the nature of the offense and the character of the offender. *State v. Young,* 119 Idaho 510, 511, 808 P.2d 429, 430 (Ct.App.1991). We will find that the trial court abused its discretion in sentencing only if the defendant, in light of the objectives of sentencing, shows that his sentence was excessive under any reasonable view of the facts. *State v. Charboneau,* 124 Idaho 497, 499, 861 P.2d 67, 69 (1993); *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992).

■ A Rule 35 motion for reduction of a sentence is a request for leniency that is committed to the discretion of the sentencing court. *State v. Knighton,* 143 Idaho 318, 319, 144 P.3d 23, 24 (2006); *State v. Allbee,* 115 Idaho 845, 846, 771 P.2d 66, 67 (Ct.App.1989). In presenting a Rule 35 motion, a defendant must show that the sentence is excessive in light of new or additional information provided to the district court in support of the motion. *State v. Huffman,* 144 Idaho 201,

159 P.3d 838 (2007). On an appeal from the denial of a Rule 35 motion, we determine whether the trial court abused its discretion, applying the same criteria that are used in reviewing the reasonableness of the original sentence. *State v. Forde*, 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987).

In *State v. Eubank*, 114 Idaho 635, 638, 759 P.2d 926, 929 (Ct.App.1988), we cautioned that "a fixed life term, with its rigid preclusion of parole or good time, should be regarded as a sentence requiring a high degree of certainty—certainty that the nature of the crime demands incarceration until the perpetrator dies in prison, or certainty that the perpetrator never, at any time in his life, could be safely released." We further stated, "[A] fixed life sentence may be deemed reasonable if the offense is so egregious that it demands an exceptionally severe measure of retribution and deterrence, or if the offender so utterly lacks rehabilitative potential that imprisonment until death is the only feasible means of protecting society."

Applying these standards, we conclude that the fixed life sentences imposed upon Perez were not an abuse of discretion. At the time of these offenses, Perez was a man twenty-eight years of age. He had numerous prior criminal convictions, both as a juvenile and as an adult, many involving violence and guns. Perez was seldom employed, but instead made a living by selling illegal drugs. He twice before served terms of imprisonment on felony convictions, both times being denied parole because of poor institutional behavior. Perez was released from prison on his most recent offense, being a felon in possession of a firearm, about two months before he committed the crimes at issue here. Perez had been ordered into many treatment and counseling programs as a juvenile and as an adult. He had been through the retained jurisdiction program in this state and through prison rehabilitation programs, yet he returned to his criminal lifestyle immediately upon release from prison.

The present offenses are extremely egregious. With respect to the aggravated assault case, Perez was driving his car on a residential street when he saw his estranged girlfriend driving her vehicle, accompanied by two male passengers. Perez and his passenger then waived handguns outside of their vehicle and pointed them at his girlfriend's vehicle. A chase ensued at speeds exceeding 70 miles per hour. During the chase, Perez called one of the passengers in the girlfriend's vehicle by cell phone, informing the man that the girlfriend was a "dead bitch." After the man called 911, Perez turned off on a side road. Perez's girlfriend later explained that Perez had a police scanner in his vehicle that he monitored at all times. In the days following the assaults, one of the girlfriend's passengers called Perez to inquire whether he should be concerned for his safety. During the call, Perez said that he had pulled the trigger on his gun several times, but that it did not fire because he had forgotten to turn off the safety. Perez told the man that he was in the process of turning off the safety with the intent of shooting, but that his passenger talked him out of it stating, "She's not worth it." Perez later admitted these facts to an investigating officer. Apparently unknown to Perez, Perez's own nine-year-old son was in the girlfriend's car at the time of the assault.

Days later, Perez shot a police officer multiple times at point blank range in order to avoid apprehension on the aggravated assault charges. Although, remarkably, the officer survived his injuries, the circumstances of the shooting amply demonstrate a willingness to kill.

Given the nature of these crimes, and Perez's extensive history of violence, we hold that the district court did not err in concluding that Perez lacked rehabilitative potential and that fixed life imprisonment was reasonable and necessary to protect society and serve the sentencing goals of retribution and deterrence. Perez made no showing on his Rule 35 motions that would support a different conclusion.

### III.

### CONCLUSION

Perez's motion to suppress statements that he made to law enforcement officers and to members of the press was properly denied, and the sentences imposed do not represent

an abuse of the trial court's discretion. Therefore, the judgments of conviction and sentences are affirmed.

Chief Judge GUTIERREZ and Judge PERRY concur.