**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 36379**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2010 Unpublished Opinion No. 585 S |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 7, 2010 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JOSE H. JAUREGGUI-ARBALLO, | ) | SUBSTITUTE OPINION THE |
| | ) | COURT'S PRIOR OPINION DATED |
| Defendant-Appellant. | ) | AUGUST 10, 2010 WAS PREVIOUSLY |
| | ) | WITHDRAWN. |
| | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. R. Barry Wood, District Judge.

Order denying motion to suppress, <u>reversed and case remanded</u>.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Jose H. Jaureggui-Arballo appeals from the district court's denial of his motion to suppress. We reverse.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Jaureggui-Arballo entered a conditional guilty plea to trafficking in methamphetamine, Idaho Code §§ 37-2732B(a)(4)(C), 18-204, reserving his right to appeal the district court's denial of his motion to suppress. In Jaureggui-Arballo's motion to suppress, he contended that all evidence secured by the State as a result of a police interrogation should have been suppressed

1

because he had invoked his right to silence. Jaureggui-Arballo timely appeals the district court's denial of his motion to suppress.

## II.

## ANALYSIS

Jaureggui-Arballo contends that the district court erred in denying his motion to suppress. He claims that, during the interrogation, he unambiguously and unequivocally invoked his right to remain silent and, thereupon, the interrogation should have ceased. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The Fifth Amendment to the Constitution of the United States, which applies to the states by virtue of the Fourteenth Amendment, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964), provides that a suspect subject to a custodial interrogation has the right to remain silent even if he initially waives that right. *Miranda v. Arizona*, 384 U.S. 436 (1966). "If the right to counsel or the right to remain silent is invoked at any point during the questioning, further interrogation must cease." *Berghuis v. Thompkins*, ___ U.S. ___ (2010). The United States Supreme Court has recently held that police may not reinitiate interrogation for a period of fourteen days. *Maryland v. Shatzer*, ___ U.S. ___ (2010). We have previously held that interrogation may not be reinitiated for a "substantial time." *State v. Robinson*, 115 Idaho 800, 803, 770 P.2d 809, 812 (Ct. App. 1989) (citing *State v. Blevins*, 108 Idaho 239, 697 P.2d 1253 (Ct. App. 1985)).

"An individual's right to cut off questioning is grounded in the Fifth Amendment and must be 'scrupulously honored.'" *State v. Law*, 136 Idaho 721, 724, 39 P.3d 661, 664 (Ct. App. 2002) (citing *Michigan v. Mosley*, 423 U.S. 96 (1975)). However, the invocation of the right to remain silent must be unambiguous and unequivocal. *Berghuis*, ___ U.S. at ___. The *Berghuis* Court recently held as follows:

> In the context of invoking the *Miranda* right to counsel, the Court in *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994), held that a suspect must do so "unambiguously." If an accused makes a statement

2

concerning the right to counsel "that is ambiguous or equivocal" or makes no statement, the police are not required to end the interrogation, *ibid.*, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights, 512 U.S., at 461-162, 114 S.Ct. 2350.

The Court has not yet stated whether an invocation of the right to remain silent can be ambiguous or equivocal, but there is no principled reason to adopt different standards for determining when an accused has invoked the *Miranda* right to remain silent and the *Miranda* right to counsel at issue in *Davis*. See, *e.g., Solem v. Stumes*, 465 U.S. 638, 648, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984) ("[M]uch of the logic and language of *[Mosley]*," which discussed the *Miranda* right to remain silent, "could be applied to the invocation of the [*Miranda* right to counsel]"). Both protect the privilege against compulsory self-incrimination, *Miranda*, *supra*, at 467-473, 86 S.Ct. 1602, by requiring an interrogation to cease when either right is invoked, *Mosley*, *supra*, at 103, 96 S.Ct. 321 (citing *Miranda*, *supra*, at 474, 86 S.Ct. 1602); *Fare v. Michael C.*, 442 U.S. 707, 719, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979).

There is good reason to require an accused who wants to invoke his or her right to remain silent to do so unambiguously. A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that "avoid[s] difficulties of proof and . . . provide[s] guidance to officers" on how to proceed in the face of ambiguity. *Davis*, 512 U.S., at 458-459, 114 S.Ct. 2350. If an ambiguous act, omission, or statement could require police to end the interrogation, police would be required to make difficult decisions about an accused's unclear intent and face the consequence of suppression "if they guess wrong." *Id.,* at 461, 114 S.Ct. 2350. Suppression of a voluntary confession in these circumstances would place a significant burden on society's interest in prosecuting criminal activity. See *id.,* at 459-461, 114 S.Ct. 2350; *Moran v. Burbine*, 475 U.S. 412, 427, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). Treating an ambiguous or equivocal act, omission, or statement as an invocation of *Miranda* rights "might add marginally to *Miranda*'s goal of dispelling the compulsion inherent in custodial interrogation." *Burbine*, 475 U.S., at 425, 106 S.Ct. 1135. But "as *Miranda* holds, full comprehension of the rights to remain silent and request an attorney are sufficient to dispel whatever coercion is inherent in the interrogation process." *Id.,* at 427, 106 S.Ct. 1135; see *Davis*, *supra*, at 460, 114 S.Ct. 2350.

*Berghuis*, ___ U.S. at ___.

Where a suspect's comment is ambiguous or equivocal, police are not required to cease interrogation. *Law*, 136 Idaho at 724-25, 39 P.3d 664-65. Whether a suspect has unambiguously and unequivocally invoked the right to silence is based on the totality of the circumstances and viewed objectively, that is, how a reasonable police officer under the circumstances would view the statement. *State v. Whipple*, 134 Idaho 498, 504, 5 P.3d 478, 484 (Ct. App. 2000). In

3

*Whipple*, this Court identified several factors to be considered in determining whether a suspect's statement is a clear and unequivocal invocation of the right to remain silent:

> These factors include the plain meaning of the suspect's words, the officer's response to these words, the suspect's speech patterns, content of the interrogation, demeanor and tone of the interrogating officer, the suspect's conduct during questioning, the point at which the suspect invoked the right to remain silent, the questions which drew the invocation, the officer's response and who was present during questioning.

*Id.* at 503, 5 P.3d at 483 (citing *State v. Arroya*, 988 P.2d 1124, 1132 (Colo. 1999)).

Jaureggui-Arballo asserts that "the important sections" of the interrogation, which he claims constitute an unambiguous and unequivocal invocation of the right to remain silent, and which were expressly reviewed by the district court, are as follows:

| | |
|---|---|
| Officer: | You don't want to be honest with me?! Why not? |
| Jaureggui-Arballo: | No, no. It's not being honest. It's just that I want someone to help me! |
| | . . . . |
| Officer: | Did you talk to her? |
| Jaureggui-Arballo: | You know what? My head hurts really bad. I can't . . . I can't keep going on with this. |
| Officer: | Yes. Did you talk. . . listen, well, I. . . |
| Jaureggui-Arballo: | Tomorrow. . . Let me sleep! |
| Officer: | I understand that your, your, your head hurts, yes. |
| Jaureggui-Arballo: | Look, excuse me, excuse me. Show me the charges against me. Why I was arrested and all, and tomorrow I'll see who may help me or something because I can't. . . I can't. . . I can't anymore, I can't. . . |
| | . . . . |
| Officer: | Well. . . I know you know much more than you are telling me okay? And, well. . . uh. . . we can. . . uh. . . Do you know what D.E.A. is? Do you know who they are? D.E.A. - Drug Enforcement Agency? Okay? We can talk to them, and. . . and. . . and I think they, uh. . . would be willing to. . . work with you, but you need to be honest with me. |
| Jaureggui-Arballo: | Mh-hm. Bring me the. . . the charges tomorrow and then, tomorrow I'll see what I do about this because like this. I'm not going to talk to you anymore. I have a bad headache. |
| Officer: | You do, yes. But they're serious charges. |
| Jaureggui-Arballo: | Yeah, fine. |
| Officer: | Well. . . you're better off talking to me right now. |

| | |
|---|---|
| Jaureggui-Arballo: | No, No, I don't have to, if I don't want to talk to you, I don't. . . don't. . . I don't have to talk. You got charges, bring them to me and that's it, period. |
| Officer: | Well, I already told you, I told you that. . . that. . . that we have the. . . that. . . that you were arrested for that. |
| Jaureggui-Arballo: | Mh-hm. Fine. |
| Officer: | Okay. You know? Well. . . And you. . . I'm going to tell you the truth. You are implicated in. . . in all of that, okay? In. . . in. . . drug trafficking. Do you see what I mean? Do you know what trafficking is? |
| Jaureggui-Arballo: | Yes. |
| | . . . . |
| Officer: | Then, why. . . why won't you talk to me? |
| Jaureggui-Arballo: | Because I don't. . . I don't want to get involved in stuff that's not my business. |
| Officer: | That doesn't make sense. |
| Jaureggui-Arballo: | No. Besides, my head hurts a lot. I don't. . . I don't want to keep talking to you anymore. |

The district court also determined that the statements, read in the context of the whole interrogation, expressed only an unwillingness to discuss the matter at the present time, which is not an unambiguous invocation of the right to remain silent. The district court relied on *State v. Perez*, 145 Idaho 383, 179 P.3d 346 (Ct. App. 2008). In *Perez*, an officer questioned Perez and he stated that he would "rather wait." *Id*. at 387, 179 P.3d at 350. This Court held that the statement did not invoke his right to remain silent, explaining that:

> This statement was not a clear indication that Perez was refusing to talk, but rather that he wanted to postpone the conversation. A statement that expresses only an unwillingness to discuss the matter *at the present time* is insufficient to constitute an unambiguous assertion of the right to remain silent because it leaves open the possibility that the suspect will be amenable to speaking with police at a future time.

*Id*. (emphasis in original).

The district court specifically noted that the "above quoted assertions" were those which the court was asked to review. However, the district court also noted that, in its review, the statements had been read "in the context of the whole interrogation." Thus, while the "context" of the statement claimed to constitute an invocation of the right to silence may not necessitate a review of the interrogation as a whole, it appears that the district court may have looked beyond

5

the statements specifically advanced by Jaureggui-Arballo. Under these circumstances, we, too, have done so.[1]

We need not look much further. After Jaureggui-Arballo stated that he did not want to talk anymore, the officer changed tactics and accused Jaureggui-Arballo of lying and told him that he had evidence that implicated him in the crime, stating:

> That . . . says that, that im . . . implies you're guilty because you've been lying to me *and you don't want to talk to me anymore*. And, you want to keep it like that? Or . . . or . . . Do you want to start telling me the truth?
> JAUREGGUI-ARBALLO: I'm not going to talk about anything with you. I told you already!

(Emphasis added.) Significantly, the officer's reaction to this statement was to leave the room for approximately four minutes.

The officer's statements and action in leaving the room indicate that he understood Jaureggui-Arballo's statements to be an invocation of the right to remain silent. Courts are required to engage in an objective inquiry when making the determination of whether a reasonable police officer, under the circumstances, would have viewed the statement as an unequivocal invocation of the right to remain silent. *Whipple*, 134 Idaho at 504, 5 P.3d at 484. This is so because the statement itself, and the surrounding circumstances, are typically what the court has available to review. Because police are not required to cease interrogation if the suspect's comment is ambiguous, *State v. Law*, 136 Idaho 721, 724-25, 39 P.3d 661, 664-65 (Ct. App. 2002), or even necessarily required to clarify whether a defendant's statement was in fact an invocation of the right to remain silent, *see Whipple*, 134 Idaho at 504, 5 P.3d at 484, a reviewing court may not have the benefit of a statement by the officer indicating how the officer viewed the defendant's statement. This is why an objective inquiry is required in order to ascertain whether a reasonable officer would, under the circumstances, view the defendant's statement as an invocation of the right to remain silent or simply as an ambiguous and equivocal request.

In this case, this Court does have the benefit of some of the officer's statements. The officer stated a number of times that he understood that Jaureggui-Arballo did not want to talk to

---

[1]     We do not imply that the district court is required to canvas an entire interrogation transcript to identify and discuss assertions which may constitute an invocation of the right to silence, when the proponent has failed to do so or has limited the claim to identified statements.

him. The officer, however, continued with the interrogation and ultimately obtained incriminating statements. *See McGraw v. Holland*, 257 F.3d 513, 515-18 (6th Cir. 2001) (holding that where the defendant had stated "I don't want to talk about it" eight or nine times, but the officer kept urging full disclosure, such continued interrogation was objectively unreasonable as any reasonable police officer would have understood that when the defendant repeatedly asserted that she did not want to talk about the rape, she should not have been told that she had to talk about it); *Martin v. State*, 987 So.2d 1240, 1241 (Fla. App. 2008) (holding that where the officer continued with the interrogation after the defendant had repeatedly asserted that he had "nothing to say," the continued interrogation violated the defendant's right to remain silent). While the officer's statements may not be determinative, they demonstrate that he understood that Jaureggui-Arballo wanted to cut off interrogation.

After Jaureggui-Arballo's statement that he was not going to talk about anything, the officer left the room for four minutes. This action indicates that the officer understood Jaureggui-Arballo's intention as a request to cease the interrogation. *See United States v. Demarce*, 564 F.3d 989, 994 (8th Cir. 2009) (concluding that the district court's determination, that the statement "You know, I don't want to talk to you. I'm not going to sign anything," followed by the defendant walking out of the room merely reflected a reluctance to talk at that time, was in error because the defendant's statements and conduct evinced a direct, unambiguous, and unequivocal intention to remain silent); *Pierre v. State*, 22 So.3d 759, 767-68 (Fla. App. 2009) (holding that where the defendant stated, "I'm not saying anymore," and the detective asked a question, which the defendant did not answer, followed by a minute of silence, the only interpretation could be that as a reasonable officer, the detective understood the defendant's statement to be a demand that interrogation cease).

When the officer returned to the room, he began by appearing to comply with Jaureggui-Arballo's repeated request that the officer simply bring the charges. The officer asked Jaureggui-Arballo a series of questions to fill out paperwork for the charges. The officer then surreptitiously returned to interrogating Jaureggui-Arballo. After finally obtaining some incriminating statements, the officer pressed further, stating that the person he had been with said Jaureggui-Arballo had given him the money, to which he responded, "Really? Okay. Like I said, I'm not talking anymore." However, the officer continued and obtained more incriminating statements. Throughout the balance of the interrogation, Jaureggui-Arballo stated on several

7

occasions that he did not wish to continue, although in some instances he returned to statements regarding his head hurting and a desire to talk at a different time.

While the context of the entire interrogation does suggest some desire by Jaureggui-Arballo to postpone the interrogation to another time, the interrogation should have ended when Jaureggui-Arballo stated "I'm not going to talk about anything with you. I told you already!" The plain meaning of the words conveyed a clear desire not to talk, which was not directly linked to a desire to talk later. The statement was made in response to an accusation instead of a question and, thus, the demeanor of the officer and the tone of the interrogation had changed. The officer was aware that Jaureggui-Arballo had asserted that he did not have to talk to the officer, implicating the right to remain silent. The officer had previously indicated a clear understanding that Jaureggui-Arballo did not want to talk to him. Moreover, the officer's reaction and response is, indeed, telling. The officer immediately left the room for four minutes and, upon his return, began asking innocuous questions for the purpose of filling out paperwork for the charges, as requested by Jaureggui-Arballo, before returning to the substantive interrogation. Jaureggui-Arballo's statement when considered under the totality of the circumstances, the factors identified in *Whipple*, and from the point of view of a reasonable police officer under the circumstances, constituted an unambiguous and unequivocal invocation of his right to silence. Based upon the officer's clear understanding that Jaureggui-Arballo did not want to talk to him, the continued interrogation was objectively unreasonable.

## III.
## CONCLUSION

Jaureggui-Arballo unambiguously and unequivocally invoked his right to silence during the interrogation. The district court's denial of Jaureggui-Arballo's motion to suppress is reversed and the case is remanded.

Chief Judge LANSING and Judge GUTIERREZ, **CONCUR.**